2012-1319, -1402

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

SPEEDTRACK, INC.,

*Plaintiff-Appellant*,

v.

WALMART.COM USA, LLC and
ENDECA TECHNOLOGIES, INC.,

*Defendants-Cross-Appellants.*

Appeals from the United States District Court for the Northern District of
California in case no. 06-CV-7336, Judge Phyllis J. Hamilton.

## BRIEF OF PLAINTIFF-APPELLANT SPEEDTRACK, INC.

Roderick G. Dorman
Alan P. Block
Marc Morris
Mieke Malmberg
McKool Smith Hennigan, P.C.
865 S. Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234
rdorman@mckoolsmithhennigan.com

Steven J. Pollinger
Joel L. Thollander
McKool Smith, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8735
Facsimile: (512) 692-8744

*Attorneys for Plaintiff-Appellant
SpeedTrack, Inc.*

June 26, 2012

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant SpeedTrack, Inc. ("SpeedTrack"), certifies the following:

1.   The full name of every party represented by me is:  SpeedTrack, Inc.

2.   The name of the real party in interest represented by me is:

SpeedTrack, Inc.

3.   SpeedTrack, Inc. makes the following disclosures:

- SpeedTrack, Inc. does not have any parent corporations; and

- There are no publicly held corporations owning more than 10 percent or more of SpeedTrack, Inc.'s stock.

4.   The names of all law firms and the principals or associates that appeared for the party now represented by me in the trial court or are expected to appear in this court are:


Roderick G. Dorman
Marc Morris
Alan P. Block
Mieke K. Malmberg
McKool Smith Hennigan PC
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234

Steven J. Pollinger
Joel L. Thollander
McKool Smith PC
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone:  (512) 692-8700
Facsimile:  (512) 692-8744

i

Bless S. Young
Kevin I. Shenkman
Omer Salik
 (formerly appearing)
Hennigan Bennett & Dorman LLP
865 S. Figueroa St., Suite 2900
Los Angeles, CA 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234


DATED: June 26, 2012                Respectfully submitted,

                                    By:   */s/ Roderick G. Dorman*
                                            Roderick G. Dorman

                                    McKool Smith Hennigan, P.C.
                                    865 South Figueroa Street, Suite 2900
                                    Los Angeles, California 90017
                                    Telephone:  (213) 694-1200
                                    Facsimile:  (213) 694-1234
                                    rdorman@mckoolsmithhennigan.com


                                    Steven J. Pollinger
                                    Joel L. Thollander
                                    McKool Smith, P.C.
                                    300 W. 6th Street, Suite 1700
                                    Austin, TX 78701
                                    Telephone:  (512) 692-8735
                                    Facsimile:  (512) 692-8744

                                    Counsel for Plaintiff-Appellant
                                    SPEEDTRACK, INC.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ............................................................... vii

STATEMENT OF RELATED CASES ...................................................xi

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE.................................................................3

STATEMENT OF THE FACTS ..............................................................6

    I.     THE '360 PATENT................................................................6

          A.     The Asserted Claims of the '360 Patent ...................................10

          B.     The Patent Specification ...........................................................11

                1.     The Category Description Table .....................................11

                2.     The File Information Directory (or FID).........................13

                3.     The Search Filter............................................................15

          C.     The Reexamination Proceedings Requested
               by Endeca ..................................................................................15

    II.     THE ACCUSED WALMART.COM METHOD ...............................17

    III.    THE DISTRICT COURT PROCEEDINGS ......................................19

SUMMARY OF THE ARGUMENT ....................................................24

STANDARD OF REVIEW ..................................................................26

ARGUMENT .......................................................................................27

# TABLE OF CONTENTS (Cont'd)

**Page(s)**

I.    THE DISTRICT COURT ERRED IN NARROWING ITS ORIGINAL CONSTRUCTION OF "CATEGORY DESCRIPTION" TO COVER ONLY AN "ALPHABETIC" NAME—THEREBY EXCLUDING THE PREFERRED EMBODIMENT. .................................................................................27

    A.    A Claim Construction That Excludes the Preferred Embodiment Is Rarely, if Ever, Correct. .....................................................................................27

    B.    The District Court's Narrowed Construction, Covering Only "Alphabetic" Names, Excludes the Preferred Embodiment and Is Otherwise Inconsistent With the Intrinsic Evidence. ..................................................................................29

        1.    The District Court's narrowed construction excludes the preferred embodiment, which uses "numeric" names or identifiers as "category descriptions" in the FID. ................................29

        2.    The District Court's narrowed construction reads dependent claim 5 out of the patent. .....................33

        3.    The District Court's narrowed construction is otherwise inconsistent with the intrinsic evidence. .......................................................................34

    C.    The District Court's Narrowed Construction Is Also Inconsistent With the Extrinsic Evidence. ..................................................................................37

    D.    While the District Court's Original Construction Was Proper, This Court Might Consider, as a Potentially Less Confusing Alternative, a Construction of "Category Description" With No Reference to "Name." ...........................41

# TABLE OF CONTENTS (Cont'd)

**Page(s)**

II.   THE DISTRICT COURT ERRED IN
      GRANTING SUMMARY JUDGMENT BASED
      SOLELY UPON ITS IMPROPERLY
      NARROWED CONSTRUCTION OF
      "CATEGORY DESCRIPTION."......................................................42

III.  THE DISTRICT COURT ABUSED ITS
      DISCRETION IN ALLOWING DEFENDANTS
      TO ASSERT A NEW NONINFRINGEMENT
      POSITION YEARS AFTER THEY HAD
      CONVINCED THE PTO TO REJECT CLAIMS
      OF THE 360 PATENT DURING
      REEXAMINATION AND SECURED A
      LENGTHY STAY OF THIS ACTION WITH A
      CONFLICTING POSITION. ............................................................46

      A.    The Judicial Estoppel Doctrine Prevents
            Litigants from Changing a Position
            Previously Used to Secure Judicial Relief...............................46

      B.    The Facts Supporting Judicial Estoppel Are
            Undisputed. ..............................................................................47

      C.    Defendants Should Not Have Been Allowed
            to Proceed on Their New and Conflicting
            Noninfringement Theory. .........................................................48

      D.    Under the Facts of This Case, Judicial
            Estoppel Is Warranted...............................................................49

IV.   SPEEDTRACK SHOULD HAVE BEEN
      ALLOWED TO AMEND ITS INFRINGEMENT
      CONTENTIONS TO INCLUDE THE
      DOCTRINE OF EQUIVALENTS....................................................51

# TABLE OF CONTENTS (Cont'd)

**Page(s)**

V.    CONCLUSION AND STATEMENT OF RELIEF
      SOUGHT...............................................................................54

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
    616 F.3d 1283 (Fed. Cir. 2010) ..........................................................................28

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................27

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ..........................................................................42

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999) ................................................................ 28, 42

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
    596 F.3d 1098 (9th Cir. 2010) ..........................................................................49

*Cybor Corp. v. Fas Techs, Inc.*,
    138 F. 3d 1448 (Fed. Cir. 1998) ........................................................................26

*DealerTrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ........................................................................35

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
    672 F.3d 1270 (Fed. Cir. 2012) ........................................................................42

*Dorel Juvenile Group, Inc. v. Graco Children's Prod., Inc.*,
    429 F.3d 1043 (Fed. Cir. 2005) ........................................................................45

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009) ................................................................ 39, 50

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
    620 F.3d 1287 (Fed. Cir. 2010) ........................................................................27

*Hilgraeve Corp. v. Symantec Corp.*,
    265 F.3d 1336 (Fed. Cir. 2001) ........................................................................43

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) .............................................................45

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) .............................................................................26

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) .............................................................28

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*,
  467 F.3d 1355 (Fed. Cir. 2006) .................................................... 27, 51

*Pfaff v. Wells Elecs., Inc.*,
  5 F.3d 514 (Fed. Cir. 1993) ...................................................................45

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................... 28, 42

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999) .............................................................29

*Risetto v. Plumbers and Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ...................................................................50

*Russell v. Rolfs*,
  893 F.2d 1033 (9th Cir. 1990) ...............................................................46

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
  242 F.3d 1337 (Fed. Cir. 2001) .............................................................28

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991) .............................................................27

*SEB S.A. v. Montgomery Ward & Co., Inc.*,
  594 F.3d 1360 (Fed. Cir. 2010) .............................................................28

*Source Search Techs., LLC v. LendingTree, LLC*,
  588 F.3d 1063 (Fed. Cir. 2009) ................................................... 27, 48

# TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*SpeedTrack, Inc. v. Walmart Stores, Inc., et al.*,
  2012 U.S. Dist. LEXIS 22317 (N.D. Cal. Feb. 22, 2012) .................................... 6

*State of New Hampshire v. State of Maine*,
  532 U.S. 742 (2001) ............................................................................ 46

*TechSearch L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002) ........................................................ 43

*U.S. v. Liquidators of European Federal Credit Bank, In Liquidation*,
  630 F.3d 1139 (9th Cir. 2011) ....................................................... 49, 50

*United National Insurance Co. v. Spectrum Worldwide, Inc.*,
  555 F.3d 772 (9th Cir. 2009) ............................................................ 50

*Verve, LLC v. Crane Cams, Inc.*,
  311 F.3d 1116 (Fed. Cir. 2002) ........................................................ 29

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .......................................................... 28

*Wagner v. Prof. Engineers in Cal. Gov't*,
  354 F.3d 1036 (9th Cir. 2004) ................................................. 27, 50, 51

## Statutes

28 U.S.C. § 1295(a)(1) .......................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1338(a) .............................................................................. 1

28 U.S.C. § 2107 ................................................................................... 1

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

**Rules**

FED. R. APP. P. 4(a) ................................................................1

FED. R. CIV. P. 56(c) ......................................................... 27, 43

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for SpeedTrack states that no other appeal from the same civil action or proceeding in the lower court was previously before this Court, or any other court.

There are two cases pending in the Northern District of California that will be directly affected by this Court's decision in the pending appeal:

1.    *SpeedTrack, Inc. v. Office Depot, Inc., et. al.*, Case No. C-07-3602-PJH; and

2.    *SpeedTrack, Inc. v. Amazon.com, Inc., et. al.*, Case No.C-09-4479 JSW.

Both cases are presently stayed pending the resolution of this appeal.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the patent infringement actions giving rise to this appeal under the provisions of 28 U.S.C. §§ 1331 and 1338(a).

This Court has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).  This is an appeal from a final and appealable judgment entered by the District Court on March 30, 2012 [A1-5], following entry of summary judgment of non-infringement by the District Court [A8-24].  SpeedTrack timely filed the Notice of Appeal in accordance with 28 U.S.C. § 2107 and FED. R. APP. P. 4(a) on March 30, 2012.  [A4433-35].

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in holding that its original construction of the claim term "category description" should be further "construed with sole reference to an alphabetic name," when that more narrow "alphabetic" construction excludes the invention's preferred embodiment, reads a dependent claim out of the patent, is otherwise inconsistent with the specification, and was rejected for years by both sides' experts.

2.      Whether the District Court erred in granting summary judgment of no literal infringement, based upon its improperly narrowed construction, on the ground that the "category descriptions" in the accused "file information directory"—just like those in the preferred embodiment—are "numeric" and not "alphabetic."

3.      Whether the District Court abused its discretion in holding that Defendants were not judicially estopped from arguing that numeric identifiers can never be "category descriptions," when Defendants had earlier convinced the PTO to reject the claims of the patent-in-suit during reexamination, and secured a related two-year stay of this litigation, by arguing that numeric identifiers were in fact "category descriptions."

4.      Whether, given its holding that Defendants were not judicially estopped from changing their position on "category descriptions," the District

Court clearly erred in refusing to allow SpeedTrack to amend its infringement contentions with a doctrine-of-equivalents response to Defendants' new position.

## STATEMENT OF THE CASE

This appeal presents a striking set of facts: the District Court granted summary judgment based upon a last-minute narrowing of its original claim construction, notwithstanding that this narrowed reading plainly excludes the invention's preferred embodiment and was rejected for years by both sides' experts (and continues to be rejected by both side's experts even now). And while the District Court allowed Defendants to change their longstanding noninfringement position shortly before the grant of judgment on that very ground, the Court refused to allow SpeedTrack the opportunity to amend its infringement contentions in response to that belated change.

SpeedTrack brought this suit against Walmart.com USA, LLC ("Walmart.com") in 2006, alleging infringement of SpeedTrack's U.S. Patent No. 5,544,360 ("the '360 patent") through the use of "guided navigation" software provided by Intervenor Endeca Technologies, Inc. ("Endeca").[1]  [A70-91]. The asserted claims of the '360 patent allow an end user to find information stored on a computer without needing to know where the information is stored, and without needing to guess at key words likely to find the information. By limiting the

---

[1] Walmart.com and Endeca are collectively referred to as "Defendants."

search criteria to the selection of pre-defined "category descriptions" already associated with the stored information, every search is guaranteed to produce a positive result.

Following briefing and a *Markman* hearing in 2008, the District Court construed "category description" as "information that includes a name that is descriptive of something about a stored file." [A695-99]. The parties were in agreement as to this language [A207], although Defendants unsuccessfully argued that the construction should contain an additional limitation not relevant to this appeal. [A695-99]. All the parties and all their experts were also in agreement that this language was not limited to "alphabetic" descriptions. Both SpeedTrack's infringement theories and Defendants' invalidity theories were premised upon "numeric" category descriptions readable by a computer meeting the District Court's construction of "category descriptions." [SpeedTrack's infringement theories: A2470-72; A4680-4729; A3243-46; Defendants' invalidity theories: A743-46; A822-25; A1109; A1115; A1121-23].

Defendants sought reexamination of the '360 patent in 2008 based upon an allegedly invalidating reference with respect to which, they argued, "numeric identifiers" in the "file information directory" constituted the claimed "category descriptions." [A3907-12]. And after convincing the PTO at multiple points during the reexamination to reject claims of the '360 patent on this basis,

4

Defendants sought and received a stay of this litigation pending that reexamination from the District Court in early 2009.  [A2313-16]  The District Court entered the stay after the close of discovery and after full summary-judgment briefing.  When the PTO confirmed the validity of the '360 patent claims in early 2011, the District Court lifted the stay and offered the parties an opportunity to resubmit their summary judgment motions.  [A2317].

On June 23, 2011, Defendants completely changed course.  Some five years after this case was filed, three years after the exchange of expert reports and the close of discovery, and two-and-half years after full summary-judgment briefing, Defendants changed their longstanding position and argued for the first time that the accused system does not infringe because the "category descriptions" in the Walmart.com "file information directory" are numeric, rather than alphabetic.  [A4105; A2337-38].

SpeedTrack objected and requested that Defendants be judicially estopped from changing the position they had relied upon for years before both the District Court and the PTO.  [A3430-33].  SpeedTrack further pointed out that Defendants' newly proposed narrowing of the 2008 construction of "category description"—such that it would be read to cover only an "alphabetic" name—would exclude the invention's preferred embodiment, and otherwise conflict with the specification and with the positions taken by both sides' experts.  [A3855-63].  SpeedTrack also

asked that, if Defendants were permitted to change their longstanding position, SpeedTrack would be permitted in turn to amend its infringement contentions to include a responsive doctrine-of-equivalents theory. [A3934-44].

The District Court refused to find Defendants judicially estopped [A22-23], and also refused to permit SpeedTrack the opportunity to amend its infringement contentions. [A6-7]. Taking up Defendants' late-proffered argument, the Court found that "category description" should be further "construed with sole reference to an alphabetic name specifically," and then granted summary judgment against SpeedTrack on the ground that the asserted "category descriptions" in the Walmart.com "file information directory" are numeric, rather than alphabetic. [A19-20]. The District Court did not address the fact that the "category descriptions" in the preferred embodiment's "file information directory" are also— just as in the accused system—numeric, rather than alphabetic. [A21-22]; *SpeedTrack, Inc. v. Walmart Stores, Inc., et al.*, 2012 U.S. Dist. LEXIS 22317 (N.D. Cal. Feb. 22, 2012). This appeal followed.

## STATEMENT OF THE FACTS

### I.     THE '360 PATENT

Professor Jerzy Lewak[2] and his co-inventors conceived of an invention that permits an end user to search for and locate files stored in a computer system using

---

[2] Professor Lewak holds a B.S. and Ph.D. in theoretical physics from the University of Manchester in England, and is a Professor Emeritus in the

predefined, descriptive categories associated with the stored information.[3] [4:5-28].

Professor Lewak's invention overcame two problems plaguing the prior art:

mistypes and null results. [4:5-14]. Mistypes are avoided by using a "pick list" of

search terms presented to the end user for selection. [4:9-12]. Null results are

avoided by narrowing the pick list of search terms based on each prior selection

and assuring at all times that each search term presented to the end user is

associated with matching, stored information. This makes it impossible to search

for an unavailable item. [4:12-14]. Every search is thereby guaranteed to produce

a positive result.

Professor Lewak's invention is implemented using three structures:

First, "category descriptions" are defined and stored in the computer system

in a structure called a "file category table" or a "category description table." [5:2-

6:15; Fig. 3]. Preferably, the "category descriptions" in the "category description

table" are both a human-understandable (alphabetic) name[4] and an associated

---

Department of Electrical and Computer Engineering at the University of California
at San Diego. He is also the founder of Nisus Software, Inc. where, in 1989, he
designed one of the earliest word processing programs for the Apple Macintosh.

[3] All citations herein in this form refer to the column:line numbers of the '360
patent. Thus, for example, the reference "4:5-28" refers to Column 4, Lines 5-28
of the '360 patent. All references to the '360 patent are contained in the Appendix
at A4436-4450.

[4] As used herein, the "human-understandable (alphabetic) names" can be
alphabetic (e.g., "Memos"), can be numeric (e.g., "2011-2012"), or can be

computer-generated (numeric) identifier.  [5:6-20; 5:40-60; 9:11-21; Fig. 3].  Once

associated, the alphabetic and numeric identifiers mean exactly the same thing to

the computer.  [A3451-52].  The specification thus treats the associated alphabetic

and numeric names—both collectively and individually—as the relevant "category

descriptions," depending on whether the name is being used principally by the

computer or by the end user.

Second, a "file information directory" is created and stored in the computer

system.  [6:16-7:19; 9:11-40; Fig. 4].  The "file information directory" contains

information linking the "category descriptions" to specific files stored in the

system.  [4:58-62].  In contrast to the "category description table"—which contains

the human-readable (alphabetic) names—the "file information directory"

preferably contains only the associated numeric category names.  [Compare, Figs.

3 and 4; 5:4-60; 6:17-32; 9:11-40].  In particular, each entry of the "file

information directory" preferably contains a unique identifier for a file and a set of

the unique identifiers for the "category descriptions" selected from the "category

description table."  [6:17-32; Fig. 4].  The specification describes this set of unique

numeric names as "the associated category description(s) for the file."  [10:17-18].

---

alphanumeric (e.g., "Size 8").  There is no limitation in the specification that
excludes numeric or alphanumeric names.

Third, a "search filter" is created in the computer system comprising "category descriptions" selected by the end user along with a logical operator such as "AND" or "OR."  [10:37-11:10].  The search filter is used to search through the entries of the "file information directory" to locate those files that have "category descriptions" matching those in the search filter.  [10:54-60].  Matching "category descriptions" are located by the computer system using the numeric expressions of the "category descriptions," not the human-understandable (alphabetic) expressions.  [12:32-13:12].

In the preferred embodiment, the human-understandable (alphabetic) expression of the "category descriptions" are only used in those instances in which a user is interacting with the system, such as when inputting new "category descriptions" to the "category description table," when associating files with "category descriptions," and when searching for files by selecting "category descriptions."  In the preferred embodiment the associated, computer-generated (numeric) expressions of those "category descriptions" are used only by the computer when "category descriptions" are associated with the files in the "file information directory" and when the search filter searches the numeric expressions of the "category descriptions" in the "file information directory" to locate matching files and matching "category descriptions."  This makes sense: end users are

interacting with the "category description table," and the computer is interacting with the "file information directory."

On August 6, 1996, the PTO awarded Professor Lewak and his co-inventors the '360 patent on their inventive search method and system inventions.

## A.    The Asserted Claims of the '360 Patent

SpeedTrack asserts claims 1-4, 7, 11-14, 20, and 21 in this case. Independent claims 1 and 20 each relate to a method for accessing files in a data storage system of a computer system.  This appeal concerns the term "category description" in the asserted claims.

Each of the three structures created in the successive method steps of claim 1 utilize "category descriptions": (step a) a "category description table" is created containing "a plurality of category descriptions, each category description comprising a descriptive name"; (step b) a "file information directory" is created wherein each entry corresponding to a stored file comprises "at least a unique file identifier for the corresponding file, and a set of category descriptions selected from the category description table"; and (step c) a "search filter" is created "comprising a set of category descriptions."[5]

---

[5] Independent claim 20 requires structures similar to those of claim 1.  Claim 20 requires: (step a) "at least one list having a plurality of category descriptions" (similar to the "category description table" of claim 1); (step b) "a file record containing at least the file name, file location information, and the associated category descriptions for the file" (similar to the entries in the "file information

Claims 2, 4, and 5 further illuminate the "category descriptions." Claim 2 defines the "category descriptions" as comprising both "a user defined category name and a unique category description identifier created by the computer system." Claim 4 depends from claim 2 and further describes the step of creating the "category description table" as including storing in the "category description table" both the category name and the identifier.  Claim 5 (not asserted by SpeedTrack) depends from claim 4 and describes the step of creating the "file information directory" as creating an entry in the "file information directory" and "storing in the new entry the category description identifier of each of the selected category descriptions." In claim 5 the "set of category descriptions" in the "file information directory" must include the numeric identifier.  The human-understandable alphabetic expression of the "category description" is not required.

## B.    The Patent Specification

### 1.    The Category Description Table

The initial step in performing the claimed methods is the creation of a "category description table" (also referred to as a "File Category Table").  In the preferred embodiment, the "category description table" is a table that includes "lists of category names or descriptions."  [5:4-10].  Each "category description" in

directory" of claim 1); and (step c) "accepting user positional input defining a search filter of at least one category description" (similar to the "search filter" of claim 1). Unless stated otherwise, the discussion of the features of claim 1 applies equally to these structures of claim 20.

the category description table "is a descriptive name defined by the user." [5:9-10]. In the preferred embodiment, a unique number generated by the computer and identifying each "category description," together with the human-understandable expression of the name of the associated "category description," are stored in the "category description table." [5:12-39]. The "category description table" of the preferred embodiment is depicted in Figure 3 showing, for example, the human-understandable (alphabetic) identifier "MEMOS" and its associated computer-generated (numeric) identifier "008" (with a box added for emphasis):

| FILE TYPE | CONTENTS | ACTION | NAMES |
|---|---|---|---|
| 000 AGREEMENT | 100 ADDRESSES | 200 ADVANCES | 300 JONES |
| 001 COMPARISON | 101 FEATURES | 201 BETA TESTING | 301 MACQWERTY |
| 002 DOCUMENTATION | 102 INVITATION | 202 BUGS | 302 MACTAG |
| 003 E- MAIL | 103 OFFICE | 203 COMPUTERS | 303 MCARTHY |
| 004 LEGAL | 104 PLAN | 204 DEMOS | 304 NISUS |
| 005 LETTER | 105 PROGRAMMING | 205 EMPLOYEES | 305 PETER |
| 006 LIST | 106 PROMOTION | 206 PATENT | 306 PUP |
| 007 MACRO | 107 REQUEST | 207 RECEIVED | 307 SMITH |
| 008 MEMOS | 108 RESEARCH | 208 REPLY | 308 SOLO WRITER |
| 009 MINUTES | 109 SALES | 209 SENT | 309 TECHFONTS |
| 010 NEWS RELEASE | 110 TELEPHONE #S | 210 TO SEND | 310 THOMPSON |
| • | • | • | • |
| • | • | • | • |
| • | • | • | • |

FIG. 3

The advantage of including the numeric identifiers in the "category description table" is that the alphabetic expression of each "category description"

can be changed in the category description table without having to change its associated numeric identifier. [5:13-16; 9:11-21]. While the invention can be implemented without using computer-generated numeric identifiers in the "category description table," the patent instructs that such implementation is not preferred, because it creates maintenance issues that do not exist when the numeric names are used. [5:17-20].

## 2. The File Information Directory (or FID)

The second structure described in the specification is the "file information directory" or "FID" [6:16-17], which is created in the computer system after the "category description table" has been created. The FID stores information linking the "category descriptions" to specific files stored on the computer system. [4:58-62]. As a result of this association, the "category descriptions" can thereafter be used to search for files of interest.

The FID is used by the computer to determine which "category descriptions" are associated with each stored file. [9:11-21]. In the preferred embodiment, the "category descriptions" in the FID are the computer-generated numeric identifiers, rather than the human-understandable (alphabetic) expressions. [6:17-22; 6:27-32; 9:11-18]. This is demonstrated in Figure 4, which depicts an example of the FID "in accordance with the present invention" [4:44-45; 6:26-27] (with a box added for emphasis):

13

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|-----------|----------|-----------|---------------|----------------|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008,300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009, 103, 109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

## FIG. 4

As shown in the "CATEGORY_ARRAY" column, the preferred embodiment of the FID contains only the numeric "category description" expressions. Consistent with Figure 4, the specification teaches that the "category descriptions" in the FID are the unique numeric identifiers, and not the associated human-understandable alphabetic expressions. [6:17-32; 6:61-7:15; 9:11-41].

The specification also describes the process by which the "category descriptions" are selected from the "category description table" and placed in the FID. [9:22-41]. With reference to Figure 4, the unique numeric identifiers "008" and "300," associated with "MEMOS" and "JONES," respectively, are selected from the "category description table" and placed in the FID. [9:11-40]. The specification depicts this entry in the FID at 9:28-35, which again shows that only the computer-generated numeric category descriptions (i.e., "008" and "300" in the "CAT_ARRAY" column, below) are selected from the "category description table" and used in the FID (with a box added for emphasis):

14

| [FILE_NAME | FILE_LOC | DATE/TIME | NO_CAT. | CAT_ARRAY] |
|---|---|---|---|---|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008, 300 |

### 3.     The Search Filter

Finally, after the "category description table" and "file information directory" are created, a search filter using selected "category descriptions" is created in the computer system and used by the computer to search the FID for files matching the search filter criteria (i.e., to search for files with associated "category descriptions" matching the selected "category descriptions"). [10:54-59]. In performing the search, the computer again only uses the computer-generated numeric "category descriptions" to search the FID for matching entries. [10:54-60; 11:3-16; 12:38-40; 12:43-55; 12:56-13:4].

### C.     The Reexamination Proceedings Requested by Endeca

On October 24, 2008, Endeca filed a request for reexamination of the '360 patent with the PTO. [A3900-12]. The request argued that a number of claims were anticipated by the "Kleinberger" reference. Using the District Court's constructions, Endeca asserted in relevant part that the claimed "category descriptions" in the "file information directory" were satisfied by Kleinberger's use of numeric identifiers. [A3907-12].

On January 12, 2009, the PTO granted Endeca's request. [A4605-23]. Throughout the reexamination over the next two years, the PTO never wavered from its agreement with Defendants' position that the numeric identifiers in Kleinberger's "file information directory" met the "category description" claim requirements, and SpeedTrack never opposed Defendants' position or responded to the PTO's agreement with Defendants' position on this issue. Based upon this finding, among others, the PTO held in its first Office Action on December 10, 2009, that Kleinberger, in combination with other references, rendered claims 1-4, 7, 11-13, 20 and 21 obvious. [A3195-97; A3201-02]. The PTO issued second and third Office Actions to similar effect on September 21, 2010 and December 22, 2010. [A3219-23; A4632-40].

SpeedTrack distinguished Kleinberger and the other cited references on other grounds, and on March 3, 2011, the PTO issued its notice confirming the validity of all of the asserted claims, without amendment, over the prior art. [A2376-79]. The PTO maintained its acceptance of Defendants' position that the numeric identifiers in Kleinberger's "file information directory" satisfied the "category description" limitations, but found other patentable distinctions over the prior art. The reexamination certificate issued on July 5, 2011. [A3834-36].

## II.    THE ACCUSED WALMART.COM METHOD

The accused Walmart.com method operates in exactly the same manner as the preferred embodiment described in the '360 patent specification. [A3235-50; A2665-77]. In the Walmart.com system, there is a "category description table" (a file entitled "walmart.dimensions.xml")[6] that contains, for each "category description," a human-understandable alphabetic expression of "category description" and a computer-generated unique numeric identifier associated with each alphabetic expression. For example, "4294296053" corresponds to the brand "JVC." [A2827; A3245]. The association between the human-understandable and computer-generated expressions of the "category description" is stored in the Walmart.com "category description table," as depicted in the excerpt of "walmart.dimensions.xml" below [A2827] (with boxes added for emphasis):

```
<DIMENSION_NODE>
    .<DVAL TYPE="EXACT">
        <DVAL_ID ID="4294296053"/>
        <SYN DISPLAY="TRUE" SEARCH="TRUE" CLASSIFY="TRUE">JVC</SYN>
    </DVAL>
</DIMENSION_NODE>
```

The Walmart.com system also has a "file information directory" (a file named "walmart-sgmt0.records.binary")[7] that contains entries having the unique file identifier (e.g., "7811281" corresponding to the file for the "JVC GR-DA30

---

[6] An excerpt of this file is found at A2815-27.

[7] An excerpt of this file is found at A2909-14.

MiniDV Camcorder") and a set of "category descriptions" comprising the computer-generated unique numeric identifiers selected from the "category description table" (e.g., "4294296053" corresponding to "JVC"). [A3245]. This is depicted in the excerpts of the portion of the "walmart-sgmt0.records.binary" file for the JVC camcorder, shown below [A2909; A2912; A2914] (with boxes added for emphasis):

```
<RECORD>
      <PROP NAME="ITEM_ID">
          <PVAL>7811281</PVAL>
```

* * *

```
<PROP NAME="P_TITLE">
      <PVAL>JVC GR-DA30 MiniDV Camcorder w/ 30x Optical Zoom and 2.4" V slide
LCD</PVAL>
```

* * *

```
      </PROP>
      <DVAL__ID DIMENSION_ID="1" ID="2"/>
      <DVAL__ID DIMENSION_ID="125875" ID="138119"/>
      <DVAL__ID DIMENSION_ID="500579" ID="500580"/>
      <DVAL__ID DIMENSION_ID="500000" ID="500590"/>
      <DVAL__ID DIMENSION_ID="500000" ID="500620"/>
      <DVAL__ID DIMENSION_ID="500691" ID="500695"/>
      <DVAL__ID DIMENSION_ID="500698" ID="500702"/>
      <DVAL__ID DIMENSION_ID="501059" ID="501062"/>
      <DVAL__ID DIMENSION_ID="500568" ID="4292811764"/>
      <DVAL__ID DIMENSION_ID="500569" ID="4293426806"/>
      <DVAL__ID DIMENSION_ID="500501" ID="4293763268"/>
      <DVAL__ID DIMENSION_ID="500957" ID="4293786120"/>
      <DVAL__ID DIMENSION_ID="500500" ID="4294296053"/>
</RECORD>
```

Lastly, "search filters" are created such that during the search process "category descriptions" that do not correspond to any stored files are disabled, thus always guaranteeing a positive search result.  [A2665-77; A3246-50].

## III.    THE DISTRICT COURT PROCEEDINGS

SpeedTrack filed its complaint against Walmart.com nearly six years ago, on November 29, 2006.[8]  Endeca sought intervention on the grounds that it sold the "Guided Navigation" software that Walmart.com uses to perform the accused infringing method, and that it had further agreed to indemnify Walmart.  [A96-97].  The District Court permitted the intervention on April 12, 2007.  [A140-42].

In November 2007, the parties proposed constructions for various claim terms, including "category description."  [A207].  SpeedTrack proposed that "category description" be construed as "information that includes a name that is descriptive of something about a stored file."  [A207].  Defendants agreed with this language as far as it went, but suggested that the construction contain an additional "user-defined" limitation.  [A207].  Tellingly, Defendants conceded during this process that the "claims make clear" that the FID "stores information, such as … category description identifiers."  [A447].  The District Court agreed with SpeedTrack and adopted its proposed construction on June 19, 2008.  [A695-99].

---

[8] SpeedTrack also accused three other companies of infringing the '360 patent by selling GPS devices that utilize the '360 patent search methods. [A70-76]. These three GPS companies subsequently took licenses to the '360 patent and were dismissed. [A162-65; A176-79].

The District Court gave no indication, at that time, that it believed the "name" included in a "category description" must always and only be alphabetic. [A695-99].

Defendants, on the other hand, made unmistakably clear their position that the "name" included in the District Court's construction of "category description" could be numeric. Throughout the three-year discovery period, Defendants never disclosed any contention that Walmart.com did not infringe because its FID used computer-generated numeric category descriptions, which represent human-understandable alphabetic category descriptions. And in the invalidity context, Defendants and their expert consistently maintained that the Kleinberger reference, which used computer-generated numeric identifiers as the "category descriptions" in its FID, met the District Court's construction of "category description" and anticipated the asserted claims of the '360 patent. [A743-46; A822-25; A1109; A1115; A1121-23].

Fact discovery closed in August 2008, and the parties exchanged expert reports the following month. Again, neither Defendants nor their expert disclosed any contention that Walmart.com did not infringe the '360 patent because its FID used numeric, rather than alphabetic, expressions of the category descriptions. [A4009-19; A4041-60]. The parties filed cross-motions for summary judgment in November 2008, with a hearing set for January 28, 2009. [A717-47; A1200-18].

20

In their summary-judgment motion, Defendants contended that the asserted claims of the '360 patent were obvious in view of Kleinberger in combination with two other references.  [A743-46].  Defendants again asserted that Kleinberger's use of numeric identifiers in the FID satisfied the relevant "category description" limitations.  [A744-45].  And in their opposition to SpeedTrack's summary-judgment motion, Defendants did not contend that Walmart.com's use of numeric identifiers in the FID rendered the accused system noninfringing.  [A1462-89].

Meanwhile, Endeca had filed its request for reexamination, which the PTO granted on January 20, 2009.  Defendants quickly moved to stay the litigation in the District Court.  The Court vacated the scheduled hearing on the fully briefed summary-judgment motions, and, on February 5, 2009, stayed the litigation pending the outcome of the reexamination.  [A2313-16].

Following the PTO's decision on March 3, 2011 to confirm the validity of all of the asserted claims, the District Court lifted the stay and provided that the parties could file new motions for summary judgment by July 6, 2011.  [A2317].  On June 23, 2011, less than two weeks before the parties were to resubmit their motions for summary judgment, Defendants served an unsolicited supplemental response to SpeedTrack's Interrogatory No. 4, requesting Defendants to detail their non-infringement contentions, informing SpeedTrack for the first time that they would contend that Walmart.com does not literally infringe the '360 patent

because the "category descriptions" in its FID are numeric, rather than alphabetic. [A4105]. This new, late-disclosed contention contradicted Defendants' longstanding position—consistently maintained for years before the District Court and the PTO—that numeric identifiers in the FID satisfied the "category descriptions" limitation.[9]

In opposing Defendants' motion, SpeedTrack asked that the Court invoke the doctrine of judicial estoppel and preclude Defendants from taking this new position. It was in direct conflict with the position they had taken in securing a reexamination of the '360 patent and two-year stay of the litigation. [A3430-33].

The District Court heard argument on the motions for summary judgment on November 16, 2011. Two days later, it ordered the parties to "provide additional briefing with respect to the Court's prior construction of the term 'category description.'" [A3850-51]. The parties filed that briefing on December 2, 2011.

---

[9] The longstanding position that "category descriptions" could be numeric was reflected in Defendants' invalidity contentions, expert invalidity report, original summary judgment motion for invalidity, opposition to SpeedTrack's second summary judgment motion, and request for reexamination. [A4028; A4031; A822-25; A1109; A1115; A1121; A1123; A743-46; A3288; A3697-98; A3757; A3763; A3900-12]. Defendants' new and conflicting position that "category descriptions" could only be alphabetic was nowhere to be found in their three prior responses to SpeedTrack's Interrogatory No. 4, in their expert rebuttal infringement report, in their original motion for summary judgment of noninfringement, or in their opposition to SpeedTrack's motion for summary judgment of infringement. [A3988-91; A3993-94; A3996-4019; A4041-62; A717-47; A1462-89].

[A3852-64; A4146-58].  SpeedTrack explained that the "name" in the court's prior construction of "category description" necessarily included both numeric and alphabetic expressions—limiting the term to alphabetic expressions alone would, among other things, exclude the preferred embodiment, and narrow the scope of the claims to a non-preferred embodiment.  [A3855-63].  It would further be inconsistent with the conduct of Defendants and their expert throughout four years of litigation.  [A3855-63].  Alternatively, SpeedTrack argued that, if "name" was to be limited to an alphabetic expression, "category description" should not be construed to require a "name." [A3858-63].

SpeedTrack also filed a motion on December 2, 2011 arguing that, if the District Court permitted Defendants to change their longstanding position on numeric "category descriptions," it should permit SpeedTrack to amend its infringement contentions to include a contention that the use of numeric identifiers in Walmart.com's FID constitutes infringement under the doctrine of equivalents. [A3934-44].  The District Court denied this motion on February 3, 2012. [A6-7].

On February 22, 2012, embracing Defendants' new and late-proffered "alphabetic" argument, the District Court issued its order granting summary judgment of non-infringement for Defendants.  [A8-24].  In the order, the Court narrowed its original construction by holding that the "name" in a "category description" should be further "construed with sole reference to an alphabetic name

23

specifically." [A19-20].  Based upon this narrowed construction, the Court granted

Defendants' motion for summary judgment of no literal infringement, finding that

Walmart.com's use of computer-generated unique numeric identifiers in its FID—

just like in the preferred embodiment—did not satisfy the claim requirements.

[A21-23].

## SUMMARY OF THE ARGUMENT

I.    The District Court erred in narrowing its original construction of

"category description" to require, always and only, an "alphabetic" name.  That

narrowed construction excludes the invention's preferred embodiment, reads a

dependent claim out of the patent, and is otherwise inconsistent with the intrinsic

and the extrinsic evidence, including the opinions of both sides' experts.

In particular, the preferred embodiment's FID contains a "set of category

descriptions" comprised of "numeric identifiers."  The specification further

explains that the FID preferably contains **only** the numeric, and not the alphabetic,

expressions of the "category descriptions" because otherwise end-user changes to

the alphabetic expressions require corresponding and maintenance-intensive

changes to the FID.  The District Court's narrowed construction, requiring only

alphabetic expressions in the FID, thus not only excludes the preferred

embodiment; it limits the claims to an embodiment expressly discouraged by the

patentees.

The narrowed construction also reads dependent claim 5—which claims a FID containing only numeric "category descriptions"—out of the patent entirely, and is otherwise inconsistent with the specification's treatment of "category descriptions" as including both alphabetic and associated numeric expressions.  It is further inconsistent with the extrinsic evidence, including in particular the opinions of both sides' experts, who have uniformly agreed that "numeric identifiers" in the FID satisfy the relevant "set of category descriptions" claim requirement.

II.    The District Court further erred in granting summary judgment of no literal infringement based solely upon this narrowed construction of "category description."  The Court determined, in effect, that summary judgment for Defendants was necessary because the accused system operates in accordance with the invention's preferred embodiment, rather than in accordance with the Court's narrowed construction.  That determination cannot be right.

III.    The District Court also abused its discretion, as an initial matter, in allowing Defendants to take their new noninfringement position—that numeric identifiers in the FID do not meet the claims—when Defendants had for years taken the opposite position, and had in fact convinced the PTO to reject claims during a reexamination of the patent-in-suit and a related two-year stay of this litigation by arguing, in part, that numeric identifiers in the FID do meet the

relevant claim limitations.  In particular, following the District Court's original

construction in June 2008, Defendants consistently argued to both the District

Court and to the PTO that Kleinberger's use of numeric identifiers in the FID

satisfied the claims and rendered the '360 patent invalid.  Having secured judicial

relief with that argument, Defendants' should have been judicially estopped from

offering their conflicting argument on summary judgment.

IV.    Finally, if the District Court were going to allow Defendants to offer a

belated, new, and conflicting noninfringement theory, which  the District Court

did, then the District Court should also have allowed SpeedTrack to offer a

doctrine-of-equivalents infringement theory in response.  Indeed, fundamental

principles of fairness required no less, and the District Court clearly erred in

finding otherwise.

## STANDARD OF REVIEW

Claim construction is a question of law reviewed *de novo* by this Court.

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996); *Cybor Corp. v.

Fas Techs, Inc.*, 138 F. 3d 1448, 1456 (Fed. Cir. 1998).  The District Court's grant

of summary judgment based upon its claim construction is likewise reviewed *de

novo* by this Court—while believing SpeedTrack's evidence and "drawing all

reasonable inferences in [its] favor."  *Green Edge Enters., LLC v. Rubber Mulch*

*Etc., LLC*, 620 F.3d 1287, 1295 (Fed. Cir. 2010); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also* FED. R. CIV. P. 56(c).

The District Court's holding that Defendants could proceed on a new and conflicting theory of noninfringement not disclosed during discovery is reviewed for abuse of discretion under Ninth Circuit law. *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1071 (Fed. Cir. 2009); *Wagner v. Prof. Engineers in Cal. Gov't*, 354 F.3d 1036, 1040 (9th Cir. 2004). And the Court's holding that SpeedTrack could not respond to that new theory by asserting infringement under the doctrine of equivalents is reviewed for a determination as to whether it was clearly unreasonable, arbitrary, or erroneous. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN NARROWING ITS ORIGINAL CONSTRUCTION OF "CATEGORY DESCRIPTION" TO COVER ONLY AN "ALPHABETIC" NAME—THEREBY EXCLUDING THE PREFERRED EMBODIMENT.

### A. A Claim Construction That Excludes the Preferred Embodiment Is Rarely, if Ever, Correct.

Claim construction is the means by which a court elaborates "the normally terse claim language: in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc*., 927 F.2d 1565, 1580 (Fed. Cir. 1991). Claims do not stand alone, but rather "are part of 'a fully integrated written instrument,' … consisting principally of a

specification that concludes with the claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (citation omitted).  Thus, claims "must be read in view of the specification, of which they are a part." *Id.*  Other claims of the patent can also shed significant light on the meaning of a claim term. *Id.* at 1314.

Although claims are generally given their ordinary and customary meaning, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315.  The specification "can provide guidance as to the meaning of the claims, thereby dictating the manner in which the claims are to be construed, even if the guidance is not provided in explicit definitional format." *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001).  For this reason, "claims must be construed so as to be consistent with the specification, of which they are a part." *Phillips*, 415 F.3d at 1316.  Of particular importance is the specification's preferred embodiment.  A claim construction that would exclude the preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).[10]

---

[10] *See also SEB S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1369 (Fed. Cir. 2010); *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010); *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1341 (Fed. Cir. 1999); *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

Patents are written for persons of ordinary skill in the art and therefore claim construction aims to capture "the meaning of words as they would be understood by persons in the field of the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119 (Fed. Cir. 2002). Thus, it is "entirely appropriate, perhaps even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

> **B.    The District Court's Narrowed Construction, Covering Only "Alphabetic" Names, Excludes the Preferred Embodiment and Is Otherwise Inconsistent With the Intrinsic Evidence.**
>
> > **1.    The District Court's narrowed construction excludes the preferred embodiment, which uses "numeric" names or identifiers as "category descriptions" in the FID.**

The District Court originally construed "category description" as, in relevant part, "information that includes a name." [A695-99]. Years later, in its order granting summary judgment, it further construed "name" as having "sole reference to an alphabetic name specifically." [A19]. This narrowed construction impermissibly excludes the preferred embodiment disclosed in the specification. *Vitronics*, 90 F.3d at 1583.

The '360 patent describes in words, "Drawings," and diagrams the three principal structures in independent claim 1. Pursuant to the District Court's narrowed construction of "category description," the "file information directory" (or "FID") in step (b) of claim 1 must include only the "alphabetic" names of the "category descriptions" selected from the "category description table." [A19-20]. Yet, without exception, every written description, "Drawing," and diagram of the preferred embodiment of the FID—including the embodiment characterized as the "File Information Directory in accordance with the present invention" [4:44-45; 6:26-27]—demonstrates that the "category descriptions selected from the category description table" and placed in the FID in step (b) are the computer-generated **numeric** identifiers—not the associated human-understandable **alphabetic** expression of the names.

The preferred FID—"in accordance with the present invention"—is plainly depicted in Figure 4. [4:44-45; 6:26-27; 6:31-32]. This Figure shows, in the column entitled "CATEGORY_ARRAY" (with a box added for emphasis) that only the computer-generated unique numeric expressions of the "category descriptions" are selected and included in the FID:

| FILE_NAME | FILE_LOC | DATE/TIME | NO_CATEGORIES | CATEGORY_ARRAY |
|-----------|----------|-----------|---------------|----------------|
| jones.mem | c:\memos | 01-01-80 01:30 | 2 | 008,300 |
| minutes.1 | f:\wpdocs | 10-10-90 10:10 | 3 | 009,103,109 |
| • | • | • | • | • |
| • | • | • | • | • |
| • | • | • | • | • |

FIG. 4

The absence of the alphabetic expression of category names in the exemplary FID is no accident.  As the specification explains, use of those alphabetic expressions in the FID is **not** preferred, because if the human-understandable names are used, then changes to those names in the category description table "would require more maintenance of the FID than with [numeric] identifiers."  [5:17-20].  That is, if the non-preferred alphabetic names of the category description are used in the FID, then when an alphabetic name is changed in the "category description table," the corresponding entry in the FID must be changed as well.  [9:14-21].  The use of the computer-generated unique numeric identifiers in the FID, rather than their associated alphabetic representations, eliminates this additional maintenance step, and is therefore always preferred. Inexplicably, the District Court's narrowed construction limits the scope of every asserted claim to this inferior, expressly non-preferred embodiment.  [A19-20].

The law is clear that a construction excluding the preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support."

31

*Vitronics*, 90 F.3d at 1582; *SEB*, 594 F.3d at 1369; *Adams Respiratory*, 616 F.3d at 1290.  The District Court's narrowed construction of "category description" runs afoul of this rule; it requires that the FID always and only make use of the "alphabetic" expressions, while the specification explains that the FID should preferably only make use of the "numeric" expressions.

There is no evidence, much less the "highly persuasive evidentiary support" required, for excluding the preferred embodiment.  Indeed, the District Court did not attempt to explain how limiting the claims to an expressly non-preferred embodiment could be justified.  This Court has indicated that such justification would require something like a clear disclaimer of the preferred embodiment in the specification or in the prosecution history.  *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1277 (Fed. Cir. 2008).  No such disclaimer exists here.  To the contrary, as described below, there is a wealth of both intrinsic and extrinsic evidence, including the conduct of Defendants and their expert, proving that one of ordinary skill in the art would not construe the claims or specification to limit the scope of the claimed invention to exclude the preferred embodiment.  Because the preferred embodiment has "category descriptions" in the form of "numeric" names in the FID, the District Court's narrowed construction cannot be correct.

### 2.    The District Court's narrowed construction reads dependent claim 5 out of the patent.

Dependent claim 5 confirms that, when properly construed, the "name" in a "category description" is not limited to its "alphabetic" expression and that, contrary to the District Court's conclusion, there is no requirement for "alphabetic descriptive names" in the FID.  Claim 5, which depends from claims 1, 2, and 4, describes an embodiment of the invention in which only the "category description identifier"—and not any alphabetic name—is stored in the FID.

By definition, independent claim 1 is broader than dependent claim 5. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).  Claim 1 thus necessarily includes the embodiment described in claim 5, in which the numeric expressions of the "category descriptions" are selected from the "category description table" and stored in the FID.  However, applying the District Court's construction of "category description" narrowly to only include "alphabetic" expressions, claim 1 would **not** include claim 5.  This is so because, under that narrowed construction,  there can be no embodiment of the invention in which only "numeric" expressions of the "category descriptions" are stored in the FID.  In short, the District Court's narrowed construction reads dependent claim 5 out of the patent.

This case is thus similar to the *SEB* case, where a proposed construction for a term in the independent claim was properly rejected when that construction

would have been inconsistent with a dependent claim. 594 F.3d at 1369 ("With this context, a person of ordinary skill in the art would not read the 'completely free' limitation of claim 1 to mean 'no solid material between the pan and the skirt' because that reading would not allow for the vertical rod of [dependent] claim 8.").

### 3. The District Court's narrowed construction is otherwise inconsistent with the intrinsic evidence.

Consistent with the scope of "category description" as it appears in the claims, the patentees used the term "category description" interchangeably in the specification to include any of the following: (1) a descriptive, human-understandable name [5:10-11]; (2) a numeric identifier associated with a descriptive name;[11] [10:10-18; 14:25-32] or (3) both a descriptive alphabetic name and an associated numeric identifier.[12] [5:40-60] This interchangeability makes sense: once a computer-generated numeric identifier is associated with a human-understandable alphabetic name in the "category description table," the two expressions are "identified," and mean the same thing.[13] [A3451-52]. Whether the

---

[11] Here, the patentees summarize the steps for storing "category descriptions" in a file record and for searching the "category descriptions" in the stored file records. In each instance, the "category descriptions" being stored consist of the numeric identifiers alone. [6:16-7:15; 9:11-40; 10:54-60].

[12] Here, the patentees describe the "category descriptions" being stored as records in a computer database, where each "category description" record includes both a "category name" and a "category identifier."

[13] The patentees' use of the term "identifier" itself demonstrates their understanding that that the human-understandable category name and the numeric

human-understandable alphabetic expression or the numeric expression of the "category description" is relevant simply depends on whether an end user or the computer is interacting with the system. [9:9-41]. When the end user interacts with the "category description table," the alphabetic expression is most relevant. [*Id.*]. When the computer interacts with the FID and the search filter, the numeric expression is most relevant. [*Id.*]. The patentees thus plainly did not limit the "category descriptions" used in the invention to only their "alphabetic" expressions as did the District Court.[14] *See Phillips*, 415 F.3d at 1316; *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999).

The District Court's contrary conclusion was based on a misinterpretation of the specification, reflecting three errors in particular. *DealerTrack, Inc. v. Huber,* 674 F.3d 1315, 1327 (Fed. Cir. 2012).

First, the Court focused principally on the disclosures set forth in column 5 of the '360 patent. [A19; 5:4-20]. That part of the specification, however, is

---

identifier mean the same thing. *Webster's* defines "identifier" to mean "one that identifies" and defines "identify" to mean "to cause to be or become identical: regard as identical." *Webster's Third New International Dictionary* (1993).

[14] Still other parts of the specification confirm that "the present invention" does not require alphabetic "category description" names in the FID. For example, the patentees disclose that the purpose of the FID is to store "information linking [such] categories to specific files." [4:55-62]. "Information" is clearly broader than alphabetic names and, had the patentees intended to limit the required information to such names, they would have said so—as they did in describing a non-preferred embodiment. [5:17-20].

entitled "File Category Table Structure" [5:3], and it provides a detailed

description only of the structure of the preferred embodiment's "category

description table"—not of its FID.  And as noted above, because the end user

interacts with the "category description table," the specification naturally

highlights the human-understandable alphabetic expression of the "category

descriptions" when discussing that table.  The structure of the FID, on the other

hand, is described in detail in column 6 under the heading "File Information

Directory Structure."  [6:16-7:19].  Column 6 teaches that the "category

descriptions" in the FID selected from the "category description table" are the

computer-generated numeric identifiers and not the human-understandable

"alphabetic" names.  Again, considering that the computer interacts with the FID,

this makes sense.

Second, the District Court incorrectly reasoned that the claim language

"differentiates between 'category descriptions' and 'category description

identifiers'" and that, therefore, the numeric identifier is distinct from the

"category description."  [A19-20].  The Court based this conclusion on dependent

claim 4, which depends in turn from claim 2—but the Court failed to consider

claim 2.  That claim makes clear that the identifier is part of, and not distinct from,

the "category description" [Claim 2; *see also* 5:45-60]:

> 2. A method for accessing files in accordance with claim 1,
> wherein each category description comprises a user defined

36

> category name and a unique category description identifier
> created by the computer system.

Third, the Court pointed to the fact that "[t]he claimed invention can also be implemented without using 'identifiers'" as supporting its narrowed construction. [A19-20]. But this ignores the more fundamental point that the implementation without "identifiers" is not a preferred embodiment, and is, in fact, expressly discouraged because it "requires more maintenance of the FID than with identifiers." [5:17-20].

### C. The District Court's Narrowed Construction Is Also Inconsistent With the Extrinsic Evidence.

In narrowing its construction of "category description" with "sole reference to an alphabetic name specifically" [A19], the District Court also ignored powerful evidence that one of ordinary skill would not have understood that term, in the context of this computer-related invention, to be so limited. This extrinsic evidence includes the opinions of both sides' experts [A3244-46; A3451-52; A822-25; A1109; A1115; A1121-23], Defendants' conduct before the District Court and the PTO [A743-46; A3900-12], and the PTO's rulings on reexamination [A4615; A3197; A3219-20; A4632-33].

The claimed invention involves method steps concerning the creation of tables and directories within and by a computer system. "Category descriptions," as well as their included "names," would be understood by one of ordinary skill in

the art in this highly technical context.  It was thus error for the District Court to disregard the unanimous testimony of the experts on this issue, particularly where the Court's construction was in direct conflict with the preferred embodiment.  *See Pitney Bowes*, 182 F.3d at 1309.

In June 2008, the District Court construed "category description" to mean: "information that includes a name that is descriptive of something about a stored file."  [A695-99].  For the next three years, the parties and their experts operated under that construction and repeatedly evidenced their unanimous agreement that it was literally met by numeric identifiers in the FID associated with and used by the computer system to identify the "category descriptions" first created in and selected from the "category description table."  [A3244-46; A3451-52; A822-25; A1109; A1115; A1121-23].

SpeedTrack's expert, Professor Korf, opined in his expert report and summary-judgment declarations that unique numeric identifiers in Walmart.com's "file information directory" satisfied the claim requirement that "category descriptions" "selected from the category description table" appear in the "file information directory."  [A4680-4729; A3244-46; A3451-52].  That is, whether letters or numbers are used to identify the "category descriptions"—for example, the numeric "008" or the alphabetic "Memos"—they mean the same thing. [A3451-52].

Defendants' expert, Professor Turnbull, did not dispute this point in his

rebuttal expert report.  [A4041-62].  Neither did he express any disagreement with

Professor Korf's "numeric" opinions in his sworn deposition testimony.  And

never did Professor Turnbull offer any noninfringement opinion based on the

absence of "alphabetic" names in Walmart.com's "file information directory."  To

the contrary, Professor Turnbull used the District Court's 2008 construction of

"category descriptions" and  affirmatively opined that the Kleinberger reference,

with its use of numeric identifiers in the FID, anticipated the claims of the '360

patent.  [A822-25; A1109; A1115; A1121-23].  Professor Turnbull's invalidity

opinion confirms that persons of ordinary skill in the art would not read the claims

to require only "alphabetic" expressions of the "category descriptions" in the

FID.[15]

Defendants' conduct before the District Court and the PTO, as well as the

PTO's findings in the reexamination, are further evidence that persons of ordinary

skill in the art would not have understood the term "category description" to be

limited to "alphabetic" names.  As described above, Defendants argued to both the

District Court and to the PTO that the relevant claim limitations were met by

---

[15] Professor Turnbull's invalidity opinion further demonstrates that Walmart.com's use of numeric identifiers in its FID literally meets the claim requirements. Under well-established law, "[t]hat which would literally infringe if later in time anticipates if earlier than the date of invention." *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1348 (Fed. Cir. 2009).

numeric identifiers in the FID.  [A743-46; A3900-12].  And in the course of

reexamination, the PTO itself agreed four times with this contention.  [A4615;

A3197; A3219-20; A4632-33].

Putting aside the propriety of allowing Defendants to proceed upon their

new "alphabetic" theory of non-infringement so long after discovery closed, the

original positions taken by Defendants and their expert provide highly persuasive

evidence that, consistent with the specification, one of ordinary skill in the art

would have understood the patent claims to include the preferred embodiment.  For

years, they consistently argued that unique numeric identifiers associated with the

category names selected from the "category description table" and used in a "file

information directory" are within the literal scope of the claims, and that the

"alphabetic" name is not required in the "file information directory."  Professor

Turnbull, in fact, has never modified his original opinion.[16]

---

[16] In opposing SpeedTrack's motion for partial summary judgment, Defendants
simultaneously took both sides of the "numeric"/"alphabetic" issue by contending
that: (1) Kleinberger's numeric identifiers in the FID rendered that reference
anticipatory [A3288; A3697-98; A3739-42; A3757; A3763; A3769; A3771]; and
(2) Walmart.com's numeric identifiers in the FID rendered that system
noninfringing [A2337-38].  These positions are flatly inconsistent and both cannot
be correct. *See Ecolab, Inc.*, 569 F.3d at 1348.

**D.**    **While the District Court's Original Construction Was Proper, This Court Might Consider, as a Potentially Less Confusing Alternative, a Construction of "Category Description" With No Reference to "Name."**

As demonstrated above, the District Court's error was not in its original, 2008 construction of "category description."  Both the parties and their experts rightly understood that this construction was compatible with the preferred embodiment, and that the "information that includes a name" covered both the alphabetic and numeric identifiers described in the specification.  The Court's error was in its eleventh-hour narrowing of that construction such that the "name" would be read with "sole reference to an alphabetic name specifically."  [A19].  To rectify this error, this Court need only make clear that the "name" in the District Court's original construction cannot be read so narrowly as to exclude the preferred embodiment.  As an alternative, however, this Court could decide that "category description" should be construed without reference to a "name" at all.[17]  That is, the Court could, in the alternative, hold that the proper construction of "category description" is: "information that is descriptive of something about a stored file."  [A3858-63].

---

[17] SpeedTrack presented this alternative to the District Court when Defendants sought to change their longstanding position on the issue.  [A3855-63].

This alternative construction is also consistent with the claims and the specification.[18] [A3858-63]. And it has the further apparent advantage of reducing any risk of confusion which plainly impacted the District Court regarding whether a "name" is limited to an alphabetic expression.

## II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED SOLELY UPON ITS IMPROPERLY NARROWED CONSTRUCTION OF "CATEGORY DESCRIPTION."

For all of the foregoing reasons, the District Court erred in narrowing its original construction of "category description" to require an "alphabetic" name. Because the Court's grant of summary judgment was based solely on its improperly narrowed construction, that holding must be reversed as well. *See Burke, Inc.*, 183 F.3d at 1338 ("Summary judgment should ordinarily be vacated or reversed … if it is based on a claim construction that this court determines to be erroneous."). At the very least, genuine issues of material fact exist as to whether the numeric identifiers of Walmart.com's accused system used in the precise manner described in the preferred embodiment—meet the requirement for a "set of

---

[18] This alternative construction also reflects the fact that, while the term "category description" appears in each of the three steps (a) to (c) in claim 1, the term "name" appears only in the first step (a)—suggesting that there is no need to include a reference to "name" in the construction of "category description." *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012); *Phillips*, 415 F.3d at 1314.

category descriptions" in the FID, thereby precluding summary judgment of noninfringement.  FED. R. CIV. P. 56(c).

A patent infringement analysis involves two steps: (1) claim construction, which is an issue of law; and (2) application of the properly construed claim to the accused product, which is a question of fact.  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1341 (Fed. Cir. 2001).  "Whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact, which, on summary judgment, is a question we review to determine whether a material fact issue remains genuinely in dispute."  *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369-70 (Fed. Cir. 2002).

The accused Walmart.com system operates just like the preferred embodiment of the '360 patent.  SpeedTrack's expert submitted a declaration in which he described in detail the operation of Walmart.com's system.  [A3234-50; A2665-77].  In that system, there is a "category description table" (a file entitled "walmart.dimensions.xml") that contains, for each category description, a human-understandable category name (e.g., "JVC") and an associated numeric identifier (e.g., "4294296053") [A2827] (with boxes for emphasis):

```
<DIMENSION_NODE>
   <DVAL TYPE="EXACT">
      <DVAL_ID ID="4294296053"/>
      <SYN DISPLAY="TRUE" SEARCH="TRUE" CLASSIFY="TRUE">JVC</SYN>
   </DVAL>
</DIMENSION_NODE>
```

The Walmart.com system further contains a "file information directory" (a file named "walmart-sgmt0.records.binary") with entries having the unique file identifier (e.g., "7811281") and a set of category descriptions comprising the unique identifiers selected from the category description table, as depicted below [A2909; A2912; A2914] (with boxes for emphasis):

```
<RECORD>
        <PROP NAME="ITEM_ID">
            <PVAL>7811281</PVAL>
```

\* \* \*

```
    <PROP NAME="P_TITLE">
        <PVAL>JVC GR-DA30 MiniDV Camcorder w/ 30x Optical Zoom and 2.4" V Slide
LCD</PVAL>
```

\* \* \*

```
        </PROP>
        <DVAL_ID DIMENSION_ID="1" ID="2"/>
        <DVAL_ID DIMENSION_ID="125875" ID="138119"/>
        <DVAL_ID DIMENSION_ID="500579" ID="500580"/>
        <DVAL_ID DIMENSION_ID="500000" ID="500590"/>
        <DVAL_ID DIMENSION_ID="500000" ID="500620"/>
        <DVAL_ID DIMENSION_ID="500691" ID="500695"/>
        <DVAL_ID DIMENSION_ID="500698" ID="500702"/>
        <DVAL_ID DIMENSION_ID="501059" ID="501062"/>
        <DVAL_ID DIMENSION_ID="500568" ID="4292811764"/>
        <DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>
        <DVAL_ID DIMENSION_ID="500501" ID="4293763268"/>
        <DVAL_ID DIMENSION_ID="500957" ID="4293786120"/>
        <DVAL_ID DIMENSION_ID="500500" ID="4294296053"/>
</RECORD>
```

In opposing Defendants' summary judgment motion, Professor Korf testified that [A3452]:

44

> Once the descriptive name (e.g., 'JVC') and unique identifier number (e.g., '4294296053') have been defined and associated in the file 'walmart.dimensions.xml,' the computer system interprets the number as representing the name, i.e., the number and the name mean the same thing.

Defendants' expert, Professor Turnbull, evidenced his agreement with this analysis by failing to dispute Professor Korf's opinion that the numeric identifiers in the Walmart.com system literally meet the claim requirements for the FID.[19]  [A4041-60].  There is thus no evidence in the record that would support a finding that numeric identifiers do not literally meet the claim requirements.  And attorney arguments cannot support Defendants' burden on summary judgment.  *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005).

No reasonable juror, when applying a proper construction of "category description" to the evidence of record, would find that the numeric identifiers in Walmart.com's FID fail to meet the requirement of a "set of category descriptions"—described in the patent as numeric identifiers—in the claimed FID. *See Dorel Juvenile Group, Inc. v. Graco Children's Prod., Inc.*, 429 F.3d 1043, 1045 (Fed. Cir. 2005); *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 517 (Fed. Cir. 1993). Indeed, both sides' experts have long agreed that numeric identifiers just like those used in Walmart.com's accused system literally meet this claim requirement.

---

[19] Professor Turnbull further evidenced his agreement with this analysis, as noted above, by opining that Kleinberger's use of numeric identifiers in the FID literally meets the claim requirements.  [A822-25; A1109; A1115; A1121; A1123].

45

[A3244-46; A3451-52; A822-25; A1109; A1115; A1121; A1123].  The District

Court's conclusion to the contrary was in error.

**III.  THE DISTRICT COURT ABUSED ITS DISCRETION IN ALLOWING DEFENDANTS TO ASSERT A NEW NONINFRINGEMENT POSITION YEARS AFTER THEY HAD CONVINCED THE PTO TO REJECT CLAIMS OF THE 360 PATENT DURING REEXAMINATION AND SECURED A LENGTHY STAY OF THIS ACTION WITH A CONFLICTING POSITION.**

> **A.    The Judicial Estoppel Doctrine Prevents Litigants from Changing a Position Previously Used to Secure Judicial Relief.**

Judicial estoppel prevents litigants from "playing fast and loose with the

courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).  The doctrine

"prevents a party from prevailing in one phase of a case on an argument and then

relying on a contradictory argument to prevail in another phase." *State of New

Hampshire v. State of Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes

a certain position in a legal proceeding, and succeeds in maintaining that position,

he may not thereafter, simply because his interests have changed, assume a

contrary position, especially if it be to the prejudice of the party who has

acquiesced in the position formerly taken by him.").  This "protect[s] the integrity

of the judicial process" by "prohibiting parties from deliberately changing

positions according to the exigencies of the moment." *Id.* at 749-50.

**B.    The Facts Supporting Judicial Estoppel Are Undisputed.**

Fact discovery closed on August 8, 2008. Prior to the close of discovery, Defendants responded to an interrogatory requesting that they detail all of the bases for their contention that Defendant Walmart.com did not directly infringe the '360 patent. Defendants did not identify or disclose the absence of alphabetic names in the FID as a basis for noninfringement. [A4009-19].

In the same timeframe, Defendants requested reexamination of the '360 patent by the PTO. During the subsequent two-year stay of this litigation, Defendants at multiple points successfully persuaded the reexamination Examiner that the Kleinberger reference, in combination with other references, rendered claims 1, 2, and 4 of the '360 patent obvious. [A3900-12; A4615; A3197; A3219-20; A4632-33]. Their argument depended in significant part on the assertion that, under the District Court's 2008 claim constructions in this case, Kleinberger's associated numeric identifiers satisfied the "category descriptions" limitation in the claim 1, step (b) creation of the FID. [A3900-12].

In June 2011, after Defendants had used their "numeric" argument to convince the PTO to issue Office Actions rejecting claims of the '360 patent and secure a lengthy litigation stay, they reversed themselves. Long after the close of discovery, Defendants supplemented their interrogatory responses and disclosed for the first time their theory that Walmart.com's FID was not within the literal

scope of the claims because numeric identifiers, and not "alphabetic" expressions, were used to identify the "category descriptions." [A4105].

### C. Defendants Should Not Have Been Allowed to Proceed on Their New and Conflicting Noninfringement Theory.

In opposing Defendants' second summary judgment motion, SpeedTrack requested the District Court to judicially estop Defendants from proceeding on this new noninfringement theory. [A3430-33]. The Court refused to do so, for two reasons. First, it did not consider "[D]efendants' invalidity arguments to be sufficiently 'clearly inconsistent' with its infringement arguments, so as to present a basis for application of judicial estoppel." [A22]. Second, it reasoned that Defendants' change of position was justified by the reexamination: "[i]ndeed, it would be strange if the parties' arguments were not updated in order to reflect a revised understanding of the parties' arguments post-reexamination." [A23].

Neither reason given by the District Court was supported or is supportable by any evidence. It was an abuse of discretion to allow Defendants to argue noninfringement on the ground that the accused method uses numbers, rather than letters, in its FID.[20] First, the Court's conclusion that Defendants' invalidity

---

[20] In considering whether the district court abused its discretion, this Court applies Ninth Circuit law. *Source Search Techs.*, 588 F.3d at 1071. And in the Ninth Circuit, a court abuses its discretion when "application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Cal. Pharmacists Ass'n v. Maxwell-Jolly*,

arguments are not "clearly inconsistent" with their noninfringement arguments is plainly wrong. The arguments inescapably conflict: under one theory numeric identifiers in the FID do not meet the claim limitations; under the other, they do. Second, the Court's conclusion that Defendants' change of position was justified by the reexamination is also plainly wrong—and wholly unsupported. The claims were confirmed without amendment, and the District Court pointed to nothing in the reexamination suggesting that Defendants had a legitimate reason to change their longstanding position on the scope of the Court's 2008 claim construction of "category description." [A22-23].

### D.    Under the Facts of This Case, Judicial Estoppel Is Warranted.

Properly applying the Ninth Circuit's three-step doctrine, this Court should find Defendants judicially estopped from contending that claim 1 requires alphabetic category names in the FID. *See U.S. v. Liquidators of European Federal Credit Bank, In Liquidation*, 630 F.3d 1139, 1149 (9th Cir. 2011).

First, Defendants' new and late-disclosed position is clearly inconsistent with their earlier position. *New Hampshire*, 532 U.S. at 750. As discussed above, Defendants' new position that numeric identifiers do not meet the "category descriptions" requirement of the FID is clearly inconsistent with their original and longstanding position that numeric identifiers do meet this requirement. *See New*

---

596 F.3d 1098, 1104 (9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

*Hampshire*, 532 U.S. at 755; *Wagner*, 354 F.3d at 1048-49; *Liquidators*, 630 F.3d at 1148-49; *Ecolab*, 569 F.3d at 1348.

Second, Defendants successfully secured judicial relief from an administrative agency[21] based in part on their original and longstanding position. *New Hampshire*, 532 U.S. at 750.  In persuading the PTO in serial Office Actions to reject claims of the '360 patent and securing a lengthy stay of this action, Defendants "prevail[ed] in one phase of a case on an argument."  *See id.* at 749. Judicial estoppel now prevents them from "relying on a contradictory argument to prevail in another phase."  *Id.*; *Wagner*, 354 F.3d at 1050; *United National Insurance Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009). [A4615; A3197; A3219-20; A4632-33].

Third, Defendants must be estopped in order to avoid imposing an unfair detriment on SpeedTrack. *New Hampshire*, 532 U.S. at 750.  Had Defendants taken their late-disclosed position during discovery, SpeedTrack would have contended that infringement existed literally *or equivalently*; the reexamination may never have occurred; the litigation may never have been stayed; summary judgment of noninfringement would never have been granted; and this case would

---

[21] Judicial estoppel applies even where the prior statement was made in an administrative proceeding rather than in a judicial proceeding, and even where the statements are made in different proceedings.  *See Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604-05 (9th Cir. 1996).

now be going to the jury rather than to this Court on appeal.  The District Court's

failure to find Defendants' judicially estopped from changing positions thus

provided Defendants with an unfair advantage, and imposed on SpeedTrack an

unfair detriment.  *See New Hampshire*, 532 U.S. at 755; *Wagner*, 354 F.3d at 1049.

## IV.    SPEEDTRACK SHOULD HAVE BEEN ALLOWED TO AMEND ITS INFRINGEMENT CONTENTIONS TO INCLUDE THE DOCTRINE OF EQUIVALENTS.

The District Court should not have allowed Defendants to change their

longstanding position on the status of numeric "category descriptions."  But once

the Court decided to do so, it should have allowed SpeedTrack to amend its

contentions in response to that unexpected and late-proffered change.  The District

Court offered two reasons for denying SpeedTrack this modest relief—a purported

"delay" and "lack of diligence" by *SpeedTrack*, and a purported "prejudice" to

*Defendants*.  [A7].  These conclusions turn the procedural history of this case on its

head.  The District Court's decision to deny SpeedTrack the opportunity to offer a

responsive doctrine-of-equivalents theory was clearly unreasonable, arbitrary, and

erroneous, and should be reversed.  *O2 Micro*, 467 F.3d at 1366-67.

With respect to the purported "delay" and "lack of diligence" by

SpeedTrack,  Defendants did not disclose their intention to offer a new and

conflicting "alphabetic" theory until June 2011—some three years after the close

of discovery.  [A4105].  Not wishing to delay the case any further, SpeedTrack

sought judicial estoppel. [A3430-33]. But when, at the hearing a few months later, the District Court appeared disinclined to grant that relief, SpeedTrack quickly filed its motion for leave to amend its infringement contentions. [A3434-44]. The Court faulted SpeedTrack for initially seeking judicial estoppel, rather than initially seeking to amend its infringement contentions. [A7]. But to find SpeedTrack guilty of delay gets it backwards: SpeedTrack reasonably believed that the quickest path to resolution of this issue, and of the case as a whole—which had already been delayed for years by Defendants—was through judicial estoppel, rather than through a new set of infringement contentions.

Furthermore, the District Court's "delay" conclusion essentially amounts to a finding that SpeedTrack should have assumed, in June 2011, that: 1) the Court would allow Defendants to take a previously undisclosed position on summary judgment that their expert had rejected for years; 2) taking up this position itself, the Court would narrow its original construction of "category description" to exclude the preferred embodiment; and 3) the Court would then grant summary judgment on the ground that the accused system operates in accordance with the preferred embodiment, rather than in accordance with the newly narrowed construction. SpeedTrack respectfully suggests that these developments were not reasonably foreseeable, and it exhibited no "lack of diligence" in seeking judicial estoppel before seeking to amend its contentions. SpeedTrack timely objected to

the assertion of Defendants' new theory and, when it appeared that this objection would not be sustained, SpeedTrack moved immediately for appropriate relief.

With respect to the purported "prejudice" to Defendants, the Court reasoned that it would have been unfair to Defendants if an amendment "increase[d] the scope of litigation at this relatively late date and delay[ed] resolution of the case." [A7].  But this finding again gets it backwards: it was Defendants who increased the scope of the litigation, and delayed for years the resolution of the case.  If Defendants were going to be afforded an opportunity to offer a new and conflicting noninfringement theory "at this relatively late date" [A7], then SpeedTrack should have been afforded an opportunity to offer a doctrine-of-equivalents infringement theory in response. Indeed, fundamental principles of fairness required no less.

## V.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Plaintiff-Appellant SpeedTrack, Inc. respectfully

requests that this Court reverse the District Court's grant of summary judgment of

no literal infringement, vacate the judgment, and remand for further proceedings.

DATED: June 26, 2012           Respectfully submitted,

By:  */s/ Roderick G. Dorman*
          Roderick G. Dorman

McKool Smith Hennigan, P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Facsimile:  (213) 694-1234
rdorman@mckoolsmithhennigan.com


Steven J. Pollinger
Joel L. Thollander
McKool Smith, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone:  (512) 692-8735
Facsimile:  (512) 692-8744

Counsel for Plaintiff-Appellant
SPEEDTRACK, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2012, I caused the foregoing **BRIEF OF PLAINTIFF-APPELLANT SPEEDTRACK, INC.** to be electronically served via the Court's CM/ECF system upon all counsel of record.

| | |
|---|---|
| Steven Michael Bauer | Andrew Leibnitz |
| sbauer@proskauer.com | aleibnitz@fbm.com |
| Proskauer Rose LLP | Farella Braun & Martel LLP |
| One International Place | 235 Montgomery Street |
| Boston, MA 02110 | San Francisco, CA 94104 |
| Telephone:  617-526-9600 | Telephone: 415-954-4400 |
| Facsimile:  617-526-9899 | Facsimile: 415-954-4480 |
| Counsel for Wal-Mart.Com USA, LLC and Endeca Technologies, Inc. | Counsel for Wal-Mart.Com USA, LLC |

I also certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system:

Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, D.C. 20439

On this 26th day of June 2012.

            */s/ Roderick G. Dorman*
            Roderick G. Dorman

            McKool Smith Hennigan, P.C.
            865 South Figueroa Street, Suite 2900
            Los Angeles, California 90017
            Telephone:  (213) 694-1200
            Facsimile:  (213) 694-1234
            rdorman@mckoolsmithhennigan.com
            Counsel for Plaintiff-Appellant
            SPEEDTRACK, INC.

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing BRIEF FOR PLAINTIFF-APPELLANT

SPEEDTRACK, INC.

1. complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

   This brief contains 10,907 words, excluding the parts of the brief exempted

   by Fed. R. App. P. 32(a)(7)B)(iii) and Fed. Cir. R. 32(b).  Microsoft Word

   2003 was used to calculate the word count; and

2. complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the

   type style requirements of Fed. R. App. P. 32(a)(6).  This brief has been

   prepared in proportionally-spaced typeface using Microsoft Word 2003 in

   14-point Times New Roman type style.

Dated:  June 26, 2012

          */s/ Roderick G. Dorman*
           Roderick G. Dorman

           McKool Smith Hennigan, P.C.
           865 South Figueroa Street, Suite 2900
           Los Angeles, California 90017
           Telephone:  (213) 694-1200
           Facsimile:  (213) 694-1234
           rdorman@mckoolsmithhennigan.com
           Counsel for Plaintiff-Appellant
           SPEEDTRACK, INC.

**ADDENDUM**