2012-1319, -1402

In The

# United States Court Of Appeals
## For The Federal Circuit

# SPEEDTRACK, INC.,

*Plaintiff-Appellant,*

v.

# WALMART.COM USA, LLC and ENDECA TECHNOLOGIES, INC.,

*Defendants-Cross Appellants.*

Appeals from the United States District Court for
the Northern District of California in case no. 06-CV-7336,
Judge Phyllis J. Hamilton.

_____

## PRINCIPAL BRIEF OF
## DEFENDANTS-CROSS APPELLANTS

_____

Steven M. Bauer
Joel Cavanaugh
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
(617) 526-9600

Noel Andrew Leibnitz
FARELLA, BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

*Counsel for Defendants-Cross Appellants*
  *Endeca Technologies, Inc. and*
  *Walmart.com USA, LLC*

*Counsel for Defendant-Cross Appellant*
  *Walmart.com USA, LLC*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Cross Appellants Endeca Technologies, Inc. and Walmart.com USA, LLC, certify the following:

1. The full name of every party represented by me is: Endeca Technologies, Inc. and Walmart.com USA, LLC.

2. The names of the real parties in interest represented by me are: Endeca Technologies, Inc. and Walmart.com USA, LLC.

3. Endeca Technologies, Inc. makes the following disclosures:

   (A)  Oracle Corporation is Endeca Technologies, Inc.'s parent corporation; and

   (B)  Oracle Corporation is a public corporation that owns more than ten percent of Endeca Technologies, Inc.'s stock.

4. Walmart.com USA, LLC makes the following disclosures:

   (A)  Walmart.com USA, LLC is a wholly owned subsidiary of Wal-Mart Stores, Inc; and

   (B)  Wal-Mart Stores, Inc. does not have any parent corporations and there are no publicly held corporations that own 10 percent or more of its stock.

5.    The names of all law firms and the principals or associates that appeared for

the parties now represented by me in the trial court or are expected to appear

in this court are:

> PROSKAUER ROSE LLP: Steven M. Bauer, Joel Cavanaugh, Fabio
> E. Tarud, Lary Alan Rappaport, Joshua J. Pollack, Jonathan E. Rich,
> Richard B. Myrus, Colin G. Cabral, Melissa A. Siegelman

> FARELLA BRAUN + MARTEL LLP: Noel Andrew Leibnitz,
> Roderick M. Thompson

DATED: August 23, 2012        Respectfully submitted,

> */s/ Steven M. Bauer*
> Steven M. Bauer
> PROSKAUER ROSE LLP
> *Counsel for Defendants-Cross*
> *Appellants Endeca Technologies,*
> *Inc. and Walmart.com USA, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF RELATED CASES ..................................................1

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUES ...........................................................2

    I.    Plaintiff-Appellant SpeedTrack's Appeal ............................................2

    II.    Defendants-Cross Appellants Walmart.com and Endeca's Cross-Appeal ...................................................................................3

STATEMENT OF THE CASE.............................................................4

STATEMENT OF THE FACTS...........................................................9

    A.    The Parties................................................................................9

    B.    The '360 Patent .........................................................................9

    C.    "Category Descriptions" ................................................................12

    D.    The Accused Endeca and Walmart.com Technology .........................19

    E.    The District Court and Patent Office Proceedings.............................22

        1.    The Proceedings as They Relate to Claim Construction ..........22

        2.    The Proceedings as They Relate to the Reexamination............23

        3.    The Proceedings as They Relate to SpeedTrack's Untimely Effort to Amend its Infringement Contentions.........26

SUMMARY OF THE ARGUMENT ...................................................................33

ARGUMENT .................................................................................................38

I.     Standard of Review ........................................................................38

II.    Defendants' Response to SpeedTrack's Appeal ...............................40

       A.     This Court looks with "extreme disfavor" on an
              appellant's argument that the district court erred in
              applying a claim construction that the party itself had
              advocated below......................................................................40

       B.     SpeedTrack's contention that the district court "changed"
              its construction of "category description" in deciding the
              infringement issue is wrong ....................................................42

              1.     The district court used precisely the construction
                     of "category description" that SpeedTrack had
                     proposed...........................................................................42

              2.     The district court's judgment of noninfringement
                     was properly based on a comparison between the
                     accused system and its construction of "category
                     description".....................................................................45

       C.     Even if SpeedTrack were correct that the district court
              "modified" its construction when it determined that a
              "category description" which included "names that are
              descriptive of something" required *alphanumeric* names
              that have some meaning to human readers, that
              construction is not wrong as a matter of law ...........................47

       D.     The district court did not abuse its discretion in denying
              SpeedTrack's request that Defendants be judicially
              estopped from arguing that numeric identifiers are not
              "names that are descriptive of something" ...............................53

              1.     Judicial estoppel does not preclude alternative
                     noninfringement and invalidity arguments.....................53

2.    The district court correctly found that Defendants' alternative noninfringement position was not "clearly inconsistent" with their invalidity positions ........................................................... 55

E.    The district court did not abuse its discretion in denying SpeedTrack's motion for leave to amend its Final Infringement Contentions, where SpeedTrack filed the motion almost six months after it learned of Defendants' noninfringement theory ........................................................... 58

III.    Defendants-Cross Appellants' Cross-Appeal .................................... 63

A.    In granting SpeedTrack's motion for summary judgment of no anticipation, the district court erroneously concluded that the fact that the '360 Patent claims survived reexamination created a heightened burden of proof under 35 U.S.C. § 282 ...................................................... 64

B.    Under the proper burden, there were issues of material fact as to Defendants' anticipation defense for the six prior art references in question that should have precluded summary judgment ................................................ 68

CONCLUSION ...................................................................................... 69

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abtox, Inc. v. Exitron Corp.*,
    122 F.3d 1019 (Fed. Cir. 1997) ...................................................47

*Advanced Software Design Corp. v. Fiserv, Inc.*,
    641 F.3d 1368 (Fed. Cir. 2011) ...................................................59

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
    725 F.2d 1350 (Fed. Cir. 1984) ...................................................68

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................38

*Atl. Research Mktg. Sys., Inc. v. Troy*,
    659 F.3d 1345 (Fed. Cir. 2011) ...................................................41

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
    --- F.3d ---, No. 2011-1467,
    2012 WL 3037176 (Fed. Cir. July 26, 2012) ...............................55

*Business Objects, S.A. v. Microstrategy, Inc.*,
    393 F.3d 1366 (Fed. Cir. 2005) ...................................................42

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) (en banc).....................................38

*Ecolab, Inc. v. FMC Corp.*,
    569 F.3d 1335 (Fed. Cir. 2009) ...................................................55

*Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
    214 F.3d 1302 (Fed. Cir. 2000) ..............................................51, 52

*Engquist v. Or. Dep't Of Agric.*,
    478 F.3d 985 (9th Cir. 2007) ..................................................39, 54

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)....................................................................63

*Genentech, Inc. v. Amgen, Inc.*,
    289 F.3d 761 (Fed. Cir. 2002) ....................................................39, 54, 58, 59

*Grant v. City of Long Beach*,
    315 F.3d 1081 (9th Cir. 2002) ..........................................................40, 54

*Halaco Eng'g Co. v. Costle*,
    843 F.2d 376 (9th Cir. 1988) ....................................................................39

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
    78 F.3d 1575 (Fed. Cir. 1996) ..................................................................52

*Innova/Pure Water v. Safari Water Filtration*,
    381 F.3d 1111 (Fed. Cir. 2004) ................................................................61

*Johnson v. Oregon*,
    141 F.3d 1361 (9th Cir. 1998) ............................................................54, 56

*Key Pharm. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ............................................................41, 42

*L.E.A. Dynatech, Inc. v. Allina*,
    49 F.3d 1527 (Fed. Cir. 1995) ..................................................................63

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985) ................................................................58

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    481 F.3d 1371 (Fed. Cir. 2007) ................................................................68

*Lowe's Home Ctrs., Inc. v. Olin Corp.*,
    313 F.3d 1307 (11th Cir. 2002) ................................................................61

*Lucent Techs., Inc. v. Gateway, Inc.*,
    525 F.3d 1200 (Fed. Cir. 2008) ................................................................51

*Medrad, Inc. v. MRI Devices Corp.*,
    401 F.3d 1313 (Fed. Cir. 2005) ................................................................47

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ........................................................................67, 68

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).................................................................36, 54, 55

*Nike Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed. Cir. 1994) ...............................................39, 54

*North Am. Container, Inc. v. Plastipak Packaging, Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005) .....................................................51

*Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
    215 F.3d 1281 (Fed. Cir. 2000) ................................................ 39, 40

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ...................................39, 58, 59, 60

*Pharmastem Therapeutics, Inc. v. ViaCell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ...................................................66

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...........................................47, 48

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008) ...................................................67

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) ...................................................47

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) ....................................................55

*Sciele Pharma, Inc. v. Lupin, Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012) .......................................37, 66, 67

*Source Search Techs., LLC v. LendingTree, LLC*,
    588 F.3d 1063 (Fed. Cir. 2009) ..............................................39, 53

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ..................................................47

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ...................................................38

*Ultimax Cement Mfg. v. CTS Cement Mfg. Co.*,
   587 F.3d 1339 (Fed. Cir. 2009) .................................................59

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011) .................................................58

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
   555 F.3d 772 (9th Cir. 2009) ....................................................55

*United States v. Ibrahim*,
   522 F.3d 1003 (9th Cir. 2008) .......................................36, 54, 57

*United States v. Liquidators of European Fed. Credit Bank, In Liquidation*,
   630 F.3d 1139 (9th Cir. 2011) ..................................................55

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ......................................48, 52, 53

*Wagner v. Prof. Engineers in Cal. Gov't*,
   354 F.3d 1036 (9th Cir. 2004) ..................................................55

*Wordtech Sys. Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) .................................................59

## Statutes:

28 U.S.C. § 1338(a) ...........................................................................1

28 U.S.C. § 2107 ...............................................................................1

28 U.S.C. § 1295(a)(1) ......................................................................1

28 U.S.C. § 1331 ...............................................................................1

35 U.S.C. § 102 ..........................................................1, 37, 58, 69

35 U.S.C. § 102(b) ............................................................................1

35 U.S.C. § 282 ..............................................................64, 67, 68

**Rules:**

Fed. R. App. P. 4(a) ............................................................................... 1

Fed. R. Civ. P. 56(a) ............................................................................ 38

Fed. R. Civ. P. 8(d)(3) ......................................................................... 55

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Cross Appellants Endeca Technologies, Inc. and Walmart.com USA, LLC state that no other appeal in or from the same civil action or proceeding in the lower court was previously before this Court or any other appellate court.

There are two cases pending in the Northern District of California that will be directly affected by this Court's decision in the pending appeals:

(A)     *SpeedTrack, Inc. v. Office Depot, Inc., et al.*, No. C-07-3602-PJH; and

(B)     *SpeedTrack, Inc. v. Amazon.com, Inc., et al.*, No. C-09-4479 JSW.

Both cases are presently stayed pending resolution of this Appeal.

## STATEMENT OF JURISDICTION

As to Defendants-Cross Appellants' cross appeal, the district court had jurisdiction over the patent infringement action giving rise to this appeal under the provisions of 28 U.S.C. §§ 1331 and 1338(a).

This Court has exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).  This is an appeal from a final and appealable judgment entered by the district court on March 30, 2012, A000001–000005, following entry of summary judgment of no infringement in Defendants-Cross Appellants' favor, and partial summary judgment of no invalidity under 35 U.S.C. §§ 102 and 102(b) in favor of Plaintiff-Appellant. *See* A000008–000024.  Defendants-Cross Appellants

timely filed their Notice of Appeal in accordance with 28 U.S.C. § 2107 and Fed.

R. App. P. 4(a) on April 27, 2012.  A004709–004711.

## STATEMENT OF THE ISSUES

### I.    Plaintiff-Appellant SpeedTrack's Appeal

As to SpeedTrack's appeal, the issues before this Court are as follows:

1.    Was the district court's application of *SpeedTrack's* construction of "category description" in its order granting summary judgment of noninfringement wrong as a matter of law, where the court found that the accused elements in Defendants' accused system (as highlighted below)

```
        </PROP>
    <DVAL_ID DIMENSION_ID="1" ID="2"/>
    <DVAL_ID DIMENSION_ID="125875" ID="138119"/>
    <DVAL_ID DIMENSION_ID="500579" ID="500580"/>
    <DVAL_ID DIMENSION_ID="500000" ID="500590"/>
    <DVAL_ID DIMENSION_ID="500000" ID="500620"/>
    <DVAL_ID DIMENSION_ID="500691" ID="500695"/>
    <DVAL_ID DIMENSION_ID="500698" ID="500702"/>
    <DVAL_ID DIMENSION_ID="501059" ID="501062"/>
    <DVAL_ID DIMENSION_ID="500568" ID="4292811764"/>
    <DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>
    <DVAL_ID DIMENSION_ID="500501" ID="4293763268"/>
    <DVAL_ID DIMENSION_ID="500957" ID="4293786120"/>
    <DVAL_ID DIMENSION_ID="500500" ID="4294296053"/>
</RECORD>
```

have no independent meaning to human users, and therefore are not a "name that is descriptive of something about a stored file?"

2.    Did the district court abuse its discretion in finding that the Defendants' advocacy of an alternative invalidity argument in a patent reexamination did not create a judicial estoppel in the district court case that would prevent Defendants from making the noninfringement argument that numeric identifiers were not a "name that is descriptive of something about a stored file"?

3. Did the district court abuse its discretion in denying SpeedTrack's motion for leave to amend its Final Infringement Contentions to allege infringement under the doctrine of equivalents, when the district court found: (1) that SpeedTrack failed to establish good cause, or the requisite diligence, when it waited almost six months after it learned of Defendants' "category description" noninfringement defense before moving to amend its infringement contentions, and (2) that allowing SpeedTrack's motion after such a long delay would have prejudiced Defendants and significantly impacted the court's schedule for this case?

## II. Defendants-Cross Appellants Walmart.com and Endeca's Cross-Appeal

As to Defendants-Cross Appellants' appeal, the issue before this Court is as follows:

1. Did the district court err as a matter of law in granting SpeedTrack's motion for summary judgment that six prior art references did not anticipate the claims of the patent, when it applied a heightened standard requiring Defendants to present affirmative evidence that the U.S. Patent and Trademark Office was "wrong" to grant a reexamination certificate finding that those references did not anticipate the claims of the '360 Patent?

## STATEMENT OF THE CASE

These appeals arise from a patent infringement suit SpeedTrack, Inc. ("SpeedTrack") brought in the Northern District of California, accusing Walmart.com USA, LLC ("Walmart.com") – and later, intervenor defendant Endeca Technologies, Inc. ("Endeca") (together, with Walmart.com, "Defendants") – of infringing U.S. Patent No. 5,544,360, titled "Method for Accessing Computer Files and Data, Using Linked Categories Assigned to Each Data File Record on Entry of the Data File Record (the "'360 Patent"). A000070–000091; A000140–000142. Endeca, the supplier of the technology, intervened in this case to defend its customer, Walmart.com.

The '360 Patent is directed to a way for a user of a home computer to create a mnemonic file labeling system to allow him or her to easily find files, such as memos and letters, stored on his or her computer (*e.g.*, tagging a letter with user-designated search terms such as "Jones" and "Letter"). Consistent with what the patent discloses, each of the asserted claims requires a "category description comprising a descriptive name" either in a "file information directory" or a "file record." A004436-004450 ('360 Patent, 16:54–17:30; 17:54–61; 18:11–32; 20:1–44).[1] During the *Markman* proceedings, SpeedTrack and Defendants proposed different

---

[1] All citations herein in this column:line number format refer to the columns and line numbers of the '360 Patent. The '360 Patent is located in the Appendix at A004436–004450.

constructions of "category description." A000691–000716. After the *Markman*
hearing, in June 2008, the district court adopted SpeedTrack's proposed construction
of "category description," concluding it meant "information that includes a name that
is descriptive of something about a stored file." A000698–000699. The primary
issue on appeal is whether the district court properly found, when applying
SpeedTrack's construction, that a purely numeric identifier in a computer database
(*e.g.*, "4294296053"), was not a "name that is descriptive of something."

In June 2011 (after a stay of the district court proceedings pending a
reexamination of the asserted claims), Defendants supplemented their
noninfringement contentions, asserting that they intended to raise as a
noninfringement defense that their accused systems did not create "category
descriptions" having descriptive names, as that term had been proposed by
SpeedTrack and construed by the district court. A004382–004396. SpeedTrack did
not object to or move to strike Defendants' supplemental noninfringement
contentions.

On July 6, 2011, the parties filed cross-motions for summary judgment.
A002318–002352; A002618–002658. Defendants moved for summary judgment
of noninfringement, arguing (among other reasons) that because SpeedTrack's
Final Infringement Contentions pointed to a series of non-descriptive numbers as
meeting the required "category description" limitation, these numbers were not a

"name that is descriptive of something," and there was no infringement. A002337–002338.  SpeedTrack moved for summary judgment as to Defendants' Section 102 invalidity defense, asking the district court to rule that six prior art references that were before the PTO in the reexamination did not anticipate the asserted claims of the '360 Patent.  A002618–002658.

In its opposition to Defendants' motion for summary judgment of noninfringement, SpeedTrack made two primary arguments: first, that the district court should find that the Defendants were judicially estopped from making the argument that non-descriptive numbers could not meet the "category description" limitation because the argument was purportedly "inconsistent" with Defendants' position in the reexamination that the claims – when applied as broadly as SpeedTrack sought to apply them to the accused technology – were invalid in view of the prior art. A003430–003433.  Second, SpeedTrack argued that descriptive names and numeric identifiers "mean the same thing" in the accused system.  A003433–003435.

Following the hearing on the cross-motions for summary judgment in November 2011, the district court requested that the parties submit further briefing in connection with the application of the court's "prior construction" of "category description," and in particular, on "the distinction between descriptive names and numerical identifiers."  A003850–003851.  The parties submitted their supplemental briefs on December 2, 2011.  A003852–003865; A004146–A004159.

6

Having read the proverbial writing on the wall after the summary judgment hearing, and for the first time, SpeedTrack requested two new things: *first*, in its supplemental brief, SpeedTrack asked that the district court modify its construction of "category description" to remove the reference to the "descriptive name" requirement, a requirement that was *expressly* in the claim. That is, even though the claim itself required "each category description comprising a descriptive name," SpeedTrack asked the district court to re-construe the term "category description" to delete reference to the "name" and make it simply any "information that is descriptive of something about a stored file." A0003855. *Second*, SpeedTrack filed a motion for leave to amend its Final Infringement Contentions to assert a doctrine of equivalents argument as to step (b) of claim 1 and step (c) of claim 20. A003934–003945.

On February 3, 2011, the district court denied SpeedTrack's motion for leave to amend its infringement contentions, finding, among other things, that SpeedTrack had failed to show the requisite "good cause" for its motion, which it filed nearly six months after Defendants had supplemented their interrogatory response. The district court also found that allowing SpeedTrack to amend its infringement contentions would have affected the court's schedule and would have prejudiced Defendants. A000007.

Then, on February 22, 2011, the district court granted Defendants' motion for summary judgment of noninfringement. A000008–000024. In doing so, the district court affirmed that the existing construction of "category description" (which SpeedTrack had advocated) correct. A000020. Then, applying that term as SpeedTrack had asked that it be construed, the district court held that the non-descriptive numbers in the Walmart.com system that SpeedTrack had pointed to as meeting the "category descriptions" element of the claim were not "descriptive names" that the accused system therefore did not infringe. A000022. The district court also rejected SpeedTrack's request that Defendants be precluded from making this noninfringement argument at all under the doctrine of judicial estoppel, concluding that the Defendants' invalidity positions were not "clearly inconsistent" with their noninfringement arguments so as to support the application of judicial estoppel. A000022–000023.

In the same summary judgment order, the district court granted SpeedTrack's motion for summary judgment on Defendants' Section 102 invalidity defense, finding that the Defendants' expert's testimony that the prior art invalidated the claims was not enough, and that Defendants needed to show that the Patent Office was *wrong* in granting the reexamination certificate. A000015–A000016.

SpeedTrack's appeal and Defendants' cross-appeal followed.

8

## STATEMENT OF THE FACTS

### A.    The Parties

Endeca is a software company founded in 2002 and based in Cambridge, Massachusetts.  A000098.  Endeca is the leading provider of software that allows its customers (often large eCommerce retailers) to classify and better organize their data.  A003872.  In particular, Endeca's software allows companies to provide web-based interfaces that allow their customers to find merchandise and product information efficiently and intuitively on their web sites.  In December 2011, Endeca was acquired by Oracle Corporation.

Walmart.com is a customer of Endeca and a user of Endeca's software to power the search engine on Walmart.com – the retail website of the well-known department store, Wal-Mart.  A00098.

SpeedTrack is the assignee of the '360 Patent.  A00071.  While the software described in the '360 Patent was written in the early 1990s as a free software utility for home users on early Mac computers to better organize their personal document files (A004444, '360 Patent, 7:21–25), SpeedTrack now claims to have patented an "enterprise database search and analysis product."  A004680.

### B.    The '360 Patent

The '360 Patent is not an "enterprise database search and analysis product." In fact, as the patent makes so clear, it is a way for a user of a home computer to create

a mnemonic file labeling system to allow him or her to easily find files, such as memos and letters, stored on his or her computer, by tagging a letter with user-designated search terms such as "Jones" and "Letter." The patent, entitled "Method for accessing computer files and data, using linked categories assigned to each data file record on entry of the data file record," issued August 6, 1996, A004436, from an application filed in November, 1992. A004441 ('360 Patent, 1:7–8). Starting with the first sentence of the Abstract, which describes "[a] computer filing system for accessing files and data according to *user-designated* criteria," A004436 (emphasis added), the '360 Patent emphasizes that the mnemonic names are "user-designated" or "user defined," including, for example: (1) the "Field of the Invention," which states that "the invention relates generally to computer file control systems, and more specifically, to a flexible system for accessing computer files and data therein according to *user-designated* criteria," A004441 ('360 Patent, 1:23–26) (emphasis added); and (2) the "Detailed Description of the Invention," which states that "[t]he present invention consists of a computer file control system … to store information about *user-defined categories* and information linking such categories to specific files." A004442 ('360 Patent, 4:57-62) (emphasis added).

That is, the method described in the patent allows a personal computer user to define "category descriptions" for files he or she likely will store on his or her computer, and then associate those files with a given category description so that

the user can later retrieve the file using a "search filter" created by choosing one or

more of these category descriptions from a "pick list":

> In the process of search and retrieval, the invention overcomes
> the problem of search filter definition, ensuring that the user
> defines a filter which will always find at least one file, thus
> avoiding wasting time in searching for data that cannot be
> matched.  This is achieved in two ways:  First, the user is not
> required to type the key words to search; instead the user
> simply chooses the words from pick lists, making mistyping
> impossible.  Second, as the user builds the search filter
> definition, categories which would find no data are
> automatically excluded as pick list possibilities.

A004442 ('360 Patent, 4:5–14).

Figure 5 of the '360 Patent shows an example of this system, accessed

through a "graphical user interface," which the patent also sometimes refers to as

the "file manager display":



FIG. 5

In Figure 5, a "Categories Window [50] is shown on the right side of the display, with a File Window [52] on the left side. Category types [54] ("File Type," "Contents," "Action," and "Names") are shown at the top of the Categories Window [50], with *category descriptions* [56] (*e.g.*, "AGREEMENT," "PROGRAMMING," "RESEACH," "PATENT," and "SMITH") arrayed in columns below the category types." A004444 ('360 Patent, 8:31–37) (emphasis added).

## C.    "Category Descriptions"

The claim term "category descriptions" is not a term of art that would have any meaning to one of ordinary skill without reference to the patent. And, in that regard, the '360 Patent could not be any clearer – a "category description" is "a descriptive name defined by the user":

> In the preferred embodiment, the FCT [File Category Table Structure] is a table that can be modeled as having a set of columns labeled by category-type (e.g., FILE_TYPE, CONTENTS, ACTION, etc.), with entries comprising lists of category names or descriptions (e.g., the FILE_TYPE column might have entries for AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc.). ***Each category description is a descriptive name defined by the user.***

A004443 ('360 Patent, 5:4–10) (emphasis added). To put the term in context, the '360 Patent describes the problem with existing personal computer filing systems that it was trying to solve: "it is very desirable to provide a method for accessing files consonant with the way users think of them, and not limited to how such files

12

are stored in the computer." A004441 ('360 Patent, 2:51–53). To that end, the

patented system provided, among other things, "access to files using *predefined*

*categories descriptive of the contents of the files*; [and] access to files which permits

a user to create a search filter of categories of files using precise category names to

which the files belong." A004442 ('360 Patent, 3:52–55) (emphasis added).

Consistent with its use in the patent, each of the asserted claims expressly

requires that a "category description" (1) be "compris[ed of] a descriptive name;"

and (2) be placed in either a "file information directory" or a "file record."

A004448–004450 ('360 Patent, 16:54–17:30; 17:54–61; 18:11–32; 20:1–44).

Claim 1 is representative in this regard:

1. A method for accessing files in a data storage system of a
computer system having means for reading and writing data
from the data storage system, displaying information, and
accepting user input, the method comprising the steps of:

   (a) initially creating in the computer system a category
   description table containing a plurality of category
   descriptions, *each category description comprising a
   descriptive name*, the category descriptions having no
   predefined hierarchical relationship with such list or
   each other;

   (b) *thereafter creating in the computer system a file
   information directory* comprising at least one entry
   corresponding to a file on the data storage system,
   each entry comprising at least a unique file identifier
   for the corresponding file, *and a set of category
   descriptions* selected from the category description
   table; and

13

(c) thereafter creating in the computer system a search filter comprising a set of category descriptions, wherein for each category description in the search filter there is guaranteed to be at least one entry in the file information directory having a set of category descriptions matching the set of category descriptions of the search filter.

A004448 ('360 Patent, 16:54–17:11) (emphasis added).  Independent claim 20 is

similar:

20. A method for accessing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:

(a) initially defining in the computer system at least one list having a plurality of category descriptions, *each* category *description comprising a descriptive name*, the category descriptions having no predefined hierarchical relationship with such list or each other;

(b) thereafter accepting user input associating with a file at least one category description from at least one defined list;

(c) *storing in the data storage system a file record containing* at least the file name, file location information, *and the associated category descriptions for the file*;

(d) displaying from each defined list, as selectable items, only those category descriptions associated with at least one file;

(e) accepting user positional input defining a search filter of at least one category description selected from at least one displayed defined list;

(f) automatically disabling, in the computer system, selectability of all other category descriptions in each displayed list that do not have associated files which are also associated with the category descriptions of the defined search filter;

(g) searching in the computer system the category descriptions of each stored file record for a logical match to the category descriptions of the defined search filter;

(h) displaying the file names of all file records having category descriptions that logically match each category description of the defined search filter.

A0044450 ('360 Patent, 20:1–37) (emphasis added).

In addition, the discussion in the '360 Patent makes clear that the category descriptions include descriptive names. Figure 5, above, shows the mnemonic "category descriptions" such as "**AGREEMENT**," "**E-MAIL**," "**LEGAL**," "**MEMOS**," "**RESEARCH**," "**JONES**," and "**SMITH**," among others, "arrayed in columns below the category types." A004444 ('360 Patent, 8:31–37); A004440 ('360 Patent, Fig. 5). According to the patent, "each column entry" in Figure 3 (shown below), "comprises a category description," including "**AGREEMENT**," "**DOCUMENTATION**," "**ADDRESSES**," "**SMITH**," and approximately forty additional examples:

| FILE TYPE | CONTENTS | ACTION | NAMES |
|---|---|---|---|
| 000 AGREEMENT | 100 ADDRESSES | 200 ADVANCES | 300 JONES |
| 001 COMPARISON | 101 FEATURES | 201 BETA TESTING | 301 MACQWERTY |
| 002 DOCUMENTATION | 102 INVITATION | 202 BUGS | 302 MACTAG |
| 003 E- MAIL | 103 OFFICE | 203 COMPUTERS | 303 MCARTHY |
| 004 LEGAL | 104 PLAN | 204 DEMOS | 304 NISUS |
| 005 LETTER | 105 PROGRAMMING | 205 EMPLOYEES | 305 PETER |
| 006 LIST | 106 PROMOTION | 206 PATENT | 306 PUP |
| 007 MACRO | 107 REQUEST | 207 RECEIVED | 307 SMITH |
| 008 MEMOS | 108 RESEARCH | 208 REPLY | 308 SOLO WRITER |
| 009 MINUTES | 109 SALES | 209 SENT | 309 TECHFONTS |
| 010 NEWS RELEASE | 110 TELEPHONE #S | 210 TO SEND | 310 THOMPSON |
| • | • | • | • |
| • | • | • | • |
| • | • | • | • |

## FIG. 3

A004443 ('360 Patent, 5:32–35); A004439 ('360 Patent, Fig. 3).  In describing

Figure 4 of the patent, the specification also discusses the category descriptions

"**MEMOS**," "**JONES**," and "**NOTES**."  A004445 ('360 Patent, 9:22–40).

Simply put, as the patent describes it, a user "defines" categories such as

"MEMO," "LETTER," "JONES," or "SMITH," and then links those category

descriptions to specific document "files," such as to a letter written by Jones, or a

memo about Smith.  Then, when looking for those files later, the user is prompted

to click on the user-generated words, such as "LETTER" or "MEMO," and when

he or she does, if there is a letter or memo linked to the category descriptive word

"JONES," the user will be given the opportunity to click on that word as well, and

so on, until the desired file is found.

16

Notably, the '360 Patent makes the important point of distinguishing between category descriptions (which always include descriptive names) and computer-generated "identifiers," which *may* be "associated" with the "category description":

> "[E]ach category description is preferably ***associated*** with a unique identifier (preferably a number, but other identifiers could be used). The identifier is created by the computer (e.g., in sequential order) and used internally to manage the categories. If a user changes the name of a category description, the associated identifier is not changed.

A004443 ('360 Patent, 5:11–17); *see also* A004449 ('360 Patent, claim 2, stating "wherein each category description comprises a user-defined category name ***and*** a unique category description identifier created by the computer system." (emphasis added)). This explicit distinction is important here, because SpeedTrack now contends that the unique computer generated identifiers ***are*** the category descriptions of the claim. Pl.-Appellant's Br. 36.

And perhaps most important in all of this – and not even mentioned in SpeedTrack's brief – is the fact that the requirement in the claim that the "category description" include a "descriptive name" was added to the claims ***during*** prosecution. That is, after two years of prosecution, the applicants amended the claims to expressly require that "each category description compris[e] a descriptive name." A004406.

The amendment to claim 1, for example, is shown below:

1.   (Twice Amended) A method for indexing files in a data storage system of a computer system having means for reading and writing data from the data storage system, displaying information, and accepting user input, wherein each file located on the data storage system has a file name, the method comprising the steps of:

   (a)   defining in the computer system at least one list [of at least one pre-defined category description] having a plurality of category descriptions, each category description comprising a descriptive name, the category descriptions having no predefined hierarchical relationship with such list or each other;

   (b)   accepting user input associating with a file at least one category description selected from at least one defined list;

   (c)   storing in the data storage system, separately from the file, a file record containing at least the file name, file location information, and the associated category descriptions for the file.

*Id.*

As noted by SpeedTrack when arguing for its proposed claim construction, the requirement that a category description include a descriptive name was essential for the allowance of these claims:

> [N]one of the '360 patent claims, when originally filed, specified that category description "compris[e] a descriptive name." ***The patentees added this limitation to each of the independent claims in response to the Examiner's rejection of the claims over a prior art patent to Schwartz.*** The patentees added the "descriptive name" limitation to each independent claim to distinguish the fact that, in Schwartz, an "attribute" must first be assigned to the file. In Schwartz, an attribute is a term which is not descriptive of the content of the file. **In the claims of the '360 patent, category descriptions are not necessarily attributes, because, unlike Schwartz, they are descriptive names.**

A000264 (emphasis added, internal citations omitted).

Following a *Markman* hearing, on June 19, 2008, the district court issued a 26-page claim construction order, adopting the construction of "category description" that SpeedTrack advocated, word-for-word: "information that includes a name that is descriptive of something about a stored file."  A000698–000699.  The district court explained its decision as follows:

> The claim language provides the starting point for analysis of the disputed phrase at issue.  The phrase appears in independent claims 1 and 20, and in several claims that are dependent on these two claims.  Claim 1 describes a method for accessing files in a data storage system of a computer system, the method comprising the initial step of "creating in the computer system a category description table containing a plurality of category descriptions, each category description comprising a descriptive name …"  Claim 20 describes a similar method for accessing files in a data storage system of a computer system, wherein each file located on the data storage system has a file name, the method comprising the initial step of "defining in the computer system at least one list having a plurality of category descriptions, each category description comprising a descriptive name …."  Thus, the independent claims both refer to a "category description" as something that is comprised of "a descriptive name" – i.e., a name that is descriptive of something.  Any proposed construction must contain this limitation, as it is expressly provided for by the claim language itself.

A000695–000696 (internal citations omitted).

### D.    The Accused Endeca and Walmart.com Technology

SpeedTrack alleges broadly that the Walmart.com system infringes when it allows its customers to search for products on its web site by typing a search term (*e.g.*, "Books," "Movies," "Toys," etc.) into a text box, and then clicking the "Find" button.  When the customer does this, the Walmart.com site uses the

Endeca technology to help return the most relevant matching items for the search, as well as a list of options that allow the customer to refine his or her query and narrow the search.  Walmart.com customers can also browse for products by clicking on descriptive keywords (*e.g.*, "Electronics & Office"), which then present additional descriptive words to customers (*e.g.*, "Cameras & Camcorders," and then "Digital Cameras"), allowing the customers to further refine their queries.

Endeca's technology does not create (or allow the user to create) category descriptive terms.  Instead, Endeca creates "Endeca records" from source data provided by its customers – here, Walmart.com.  A003872-003874.  "Endeca records" represent the entities in a data set on which a user's search of the Walmart.com website would focus.  *Id.*  The "Endeca records" are standardized for consistency and tagged with "dimension values," which operate as tags, or labels, used to classify the records in a data set.  *Id.*

The claims require that category descriptions have "no hierarchical relationship."  But, in the Endeca system, when the records are tagged with dimension values, they are organized into hierarchical tree structures known as "dimensions."  *Id.*  There are two types of dimensions in the Walmart.com system, "flat dimensions" and "hierarchical dimensions."  *Id.*  Each dimension type has at least two levels of hierarchy.  *Id.*  The top-most dimension value in each dimension is known as a "dimension root."  *Id.*  The "dimension root" is a dimension value

that provides access to lower level dimension values (which end with "leaf dimension values") in the hierarchical tree structure. *Id.* A diagram showing a typical "dimension" is below:



*Id.*

As to SpeedTrack's infringement contentions regarding the Walmart.com system, SpeedTrack makes clear in its brief (including in the graphic reproduced below showing the accused file in Defendants' system) that the accused "category descriptions" it points to in the Walmart.com system are "computer-generated unique numeric identifiers":

```
          </PROP>
          <DVAL_ID DIMENSION_ID="1" ID="2"/>
          <DVAL_ID DIMENSION_ID="125875" ID="138119"/>
          <DVAL_ID DIMENSION_ID="500579" ID="500580"/>
          <DVAL_ID DIMENSION_ID="500000" ID="500590"/>
          <DVAL_ID DIMENSION_ID="500000" ID="500620"/>
          <DVAL_ID DIMENSION_ID="500691" ID="500695"/>
          <DVAL_ID DIMENSION_ID="500698" ID="500702"/>
          <DVAL_ID DIMENSION_ID="501059" ID="501062"/>
          <DVAL_ID DIMENSION_ID="500568" ID="4292811764"/>
          <DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>
          <DVAL_ID DIMENSION_ID="500501" ID="4293763268"/>
          <DVAL_ID DIMENSION_ID="500957" ID="4293786120"/>
          <DVAL_ID DIMENSION_ID="500500" ID="4294296053"/>
     </RECORD>
```

Pl.-Appellant's Br. 17–18. As the district court found, there simply can be no question of fact that these numeric identifiers are not a "name that is descriptive of something about a stored file." A000021–000022.

### E.     The District Court and Patent Office Proceedings

#### 1.     The Proceedings as They Relate to Claim Construction

SpeedTrack filed its complaint against Wal-Mart on November 29, 2006, alleging that certain search-related features on Wal-Mart's retail website, Walmart.com, infringed the '360 Patent.  A000070–000091.  In March 2007, Endeca moved to intervene on the grounds that the technology SpeedTrack was accusing was Endeca technology.  A000097.  The district court allowed Endeca's intervention on June 12, 2007.  A000140–000142.

On November 8, 2007, SpeedTrack and Defendants submitted their opening claim construction briefs, requesting that the district court construe ten disputed claim terms, including the term at issue in this appeal: "category description."  A000256–000340; A000434–000463.  SpeedTrack asked the district court to construe "category description" to mean "*information that includes a name that is descriptive of something about a stored file*."  A000264 (emphasis added).  In support of its proposed construction, SpeedTrack argued:

> The term "category description" is, however, expressly and plainly defined in independent claims 1 and 20 as "comprising a descriptive name."  The use of the open-ended transitional term "comprising" to qualify "category description" in these claims means that the "category description" must include at least a descriptive name, but may include more information as well.

The term "category description" is further defined in independent claims 2 and 11 of the '360 patent. Because the term "category description" is used in dependent claims as well as independent claims, any construction of "category description" must also be consistent with these dependent claims.

*In dependent claims 2 and 11, the term "category description" includes "a unique category description identifier created by the computer system"* **in addition to the descriptive name**. Accordingly, in these claims, "category description" must include an identifier and cannot be limited to the name.

A000264–000265 (emphasis added). SpeedTrack's argument to the district court that "identifiers" are "in addition to the descriptive name" is important, because SpeedTrack **now** argues that the numeric identifier **is** the "category description" element. *See* Pl.-Appellant's Br. 34 n.11; 34 n.13; 36.

## 2.    The Proceedings as They Relate to the Reexamination

In November 2008, after fact discovery was complete, the parties filed cross-motions for summary judgment, with a hearing on the motions scheduled for January 28, 2009. A000717–000748; A001200–001218. But, on January 12, 2009, the PTO granted Endeca's request with the PTO for *ex parte* reexamination of asserted claims 1–4, 7, 11–14, 20, and 21. A004605–004607. (Endeca had filed the reexamination request three months earlier, on October 24, 2008.) A004605–004624. On February 5, 2009, the district court granted Endeca's motion to stay the action pending the reexamination. A002313–002316.

In its reexamination request, Endeca argued that the claims were invalid because others had done essentially what SpeedTrack was accusing Defendants of doing, long before the '360 Patent application was filed. A003901–003903. For example, Endeca pointed out that the claims were obvious over the "Godin" or "Suzuki" references, in view of the "Kleinberger" reference. A003903.

After almost a year and a half of rejections, on September 21, 2010, the PTO issued a Final Office Action, maintaining its rejections of claims 1, 2, 4, 7, 11–13, 20, and 21, but allowing claims 3 and 14. A003212–003233. After SpeedTrack met with the PTO and submitted a response to the Final Rejection, the PTO issued an Advisory Office Action, again rejecting claims 1, 2, 4, 7, and 11–13 (A004625–004648), and confirming that the claims were obvious over Godin/Suzuki in view of Kleinberger. A004632–004635; A004636–004640.

With regard to the Suzuki-Kleinberger combination, the Examiner wrote:

> Suzuki discloses the invention substantially as claimed with the exception of the order of method steps. Kleinberger teaches said order of method steps. See item 13 a of the prior action. It would have been obvious to one of ordinary skill in the art at the time of invention to have performed the method steps of Suzuki in the order taught by Kleinberger because the results of computer programming arts are generally predictable, one of ordinary skill in the art would have recognized (a) that the results of said combination were predictable and (b) that the elements/steps disclosed by Suzuki and Kleinberger would perform the same functions as they did separately.

A004637.

On January 12, 2011, SpeedTrack and its patent counsel met with the PTO a third time. Unfortunately, no transcript is available regarding this meeting. However, on March 3, 2011, completely reversing itself, the PTO issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate, withdrawing the rejections stated in the previous office actions and allowing the asserted claims. A003318–003321. Notably, in changing her view on obviousness, the Examiner explained that she was now going to give the claims a different construction than SpeedTrack had advocated in the district court case, particularly that the "category description table" in Kleinberger was not *initially* created in the computer system:

> However, even though Kleinberger teaches adding the keywords are [*sic*] to the category description table (keyword file 46) *before* the textnumber and list of keynumbers are added to the text-keyword file 48, this is not the same as initially creating in a [*sic*] the computer system a category description table containing a plurality of category descriptions.

A003320 (emphasis in original). That is, the Examiner gave the term a meaning different than SpeedTrack had given it in the district court – the Examiner, having met privately with SpeedTrack, now believed that "initially" in the claim referred to the *first* step in a process, whereas SpeedTrack had applied the term in the district court to simply mean a step *before* a "second" step. As a result of this changed interpretation (one to which the Defendants had no right to respond given the *ex parte* nature of the proceeding), the Examiner now found that the "category descriptions" in Kleinberger were derived from a source other than the "category

description table," meaning that something else had been "initially" done before the "category description table" "*initially*" created in the computer system:

> Moreover, since the keywords are derived from the text files, (a) the keyword file is not initially created in the computer system and (b) the set of category descriptions for each entry of the file information directory is not selected from the category description table.

A003320. This is also true, however, in the Endeca system, and created a second, independent noninfringement argument, but the district court found no need to address it, given its finding on the "category description" issue.

Following the PTO's issuance of the Notice of Intent to Issue *Ex Parte* Reexamination Certificate, the district court lifted the stay on March 16, 2011, and set a deadline of July 6, 2011 for the parties to file renewed motions for summary judgment. A000062; A002317.

### 3. The Proceedings as They Relate to SpeedTrack's Untimely Effort to Amend its Infringement Contentions

On July 21, 2008, SpeedTrack served its Final Infringement Contentions pursuant to Northern District of California Patent Local Rule 3-6. A002459– 002466.[2] The Local Patent Rules required SpeedTrack to identify at that time any doctrine of equivalents arguments, and SpeedTrack in fact identified two claim limitations for which it alleged infringement under the doctrine of equivalents: "the

---

[2] The present case was filed prior to December 1, 2009, when revisions to the N.D. Cal. Local Patent Rules took effect. All citations herein are to the Rules that were in effect prior to December 1, 2009.

'displaying' step of claim 11; and step (b) of claim 20. A004320; A004324. For every other element, including step (b) of claim 1 and step (c) of claim 20 (the elements requiring "category descriptions"), SpeedTrack alleged only that they were "literally performed in Wal-Mart's accused method." A004294–004327.

On June 23, 2011, after the reexamination, and well before the district court's renewed summary judgment deadline, Walmart.com and Endeca (as was their right, as defendants) supplemented their noninfringement contentions, making clear that they intended to raise the noninfringement defense that their accused system did not contain "category descriptions" having descriptive names, as that term had been construed by the district court. A004382–004396. SpeedTrack did not object to, nor did it move to strike, the supplemental interrogatory response.

On July 6, 2011, Defendants moved for summary judgment of noninfringement, asserting, first, that the claims needed to be construed the same way in the district court proceeding as the PTO had applied them in the reexamination; second, Defendants argued that the Walmart.com system did not contain "category descriptions" having a descriptive name. A002318–002352. Defendants asserted that SpeedTrack's infringement contentions pointed to a series of numbers as "meeting" the required "category description" limitation, even though these numbers could not conceivably be viewed as "information that includes *a name that is descriptive* of something about a stored file." A002337–002338.

27

On July 20, 2011, SpeedTrack filed its opposition to Defendants' motion for summary judgment of noninfringement.  A003413–003442.  Despite the fact that the issue of whether these purely numeric identifiers could be considered "a name that is descriptive of something about a stored file" had been squarely joined, SpeedTrack's opposition did not argue that Defendants infringed step (b) of claim 1 or step (c) of claim 20 under the doctrine of equivalents.  Nor did SpeedTrack file a motion for leave to amend its infringement contentions at this time.  Rather, SpeedTrack argued that Defendants should be judicially estopped from even making this noninfringement argument, contending that Defendants' noninfringement argument was inconsistent with their petition for reexamination to the PTO which argued that the claims – as SpeedTrack sought to apply them to the accused products – were invalid in view of prior art that disclosed almost the same technology as the accused technology.  A003430–003432.

Briefing closed on the parties' cross-motions for summary judgment on July 27, 2011, and on November 16, 2011, the district court heard oral argument on the motions, and on the substance of the noninfringement issues.  A002317; A004551–004600.  As of the date of, and even through, the oral argument, SpeedTrack had *yet* to allege infringement under the doctrine of equivalents as to step (b) of claim 1 or step (c) of claim 20.

On November 18, 2011, *after* the hearing on the parties' cross-motions for summary judgment, the district court asked the parties to submit further briefing "with respect to the court's prior construction of the term 'category description' … addressing the distinction between descriptive names and numerical identifiers." A003850–003851.  The parties submitted their supplemental briefs on December 2, 2011.  A003852–003865; A004146–004159.

In this additional round of briefing, SpeedTrack argued that the district court's construction of "category description," *which SpeedTrack itself had proposed*, was "legally infirm," *if* the court believed that a "a name that is descriptive of something about a stored file" meant the name had to be a "human readable" descriptive name.  A003852–003865.  SpeedTrack then asked the district court to reconsider and modify its construction of "category description" to entirely delete reference to the "name," requesting that the court change the construction from "information *that includes a name* that is descriptive of something about a stored file," to "information [deleted language] that is descriptive of something about a stored file" – that is, dropping the "descriptive name" requirement altogether.  A003855 (emphasis added).  Of course, in making this argument, SpeedTrack was asking the court to ignore the fact that the "descriptive name" was an express requirement of the claim, having been added during prosecution.

More importantly, now recognizing that the district court's application of SpeedTrack's construction was likely to lead to defeat on the merits, on December 2, 2011, SpeedTrack filed a motion for leave to amend its Final Infringement Contentions to add a contention that *if* it lost on literal infringement, then the accused Walmart.com system instead infringed under the doctrine of equivalents with respect to step (b) of claim 1 and step (c) of claim 20. A003934–003945. SpeedTrack argued that Endeca's and Walmart.com's "late" disclosure of their noninfringement contention had prejudiced SpeedTrack, because SpeedTrack, *if* it had known of that noninfringement position earlier, would have amended its infringement contentions earlier to include a doctrine of equivalents argument. A003936.

Defendants opposed SpeedTrack's motion for leave to amend, arguing that: (1) SpeedTrack's motion came far too late, given that it had an obligation (three years earlier) under the Local Patent Rules to provide its Final Infringement Contentions – *including* a statement of whether it intended to rely on the doctrine of equivalents – *before* it even knew of the Defendants' noninfringement contentions; (2) SpeedTrack had not acted with the necessary diligence, even after it learned in June 2011 that this noninfringement argument was going to be pressed, as demonstrated by its failure to bring the motion for leave to amend until after the summary judgment hearing; (3) the amendment to the infringement

contentions, in any event, would be futile, because SpeedTrack could not rely on the doctrine of equivalents here because it had purposely added the language it was now seeking to avoid during the prosecution of the patent; and (4) permitting amendment would result in significant delay in the proceedings and prejudice the Defendants.  A004268–004281.

On February 3, 2012, the district court denied SpeedTrack's motion for leave to amend its Final Infringement Contentions.  A000007.  The district court held that, putting aside its obligation to assert its doctrine of equivalents arguments three years earlier, SpeedTrack's delay of almost six months after learning that Defendants intended to press this issue before moving to amend "constitute[d] a lack of diligence in seeking to amend."  *Id.*  The court also rejected SpeedTrack's argument that by making a judicial estoppel argument in opposition to Defendants' motion for summary judgment on *literal* infringement, SpeedTrack showed the requisite diligence. The court found that "the inclusion of an uncertain estoppel argument in connection with dispositive motions is no substitute for a formal and affirmative decision to seek leave to amend."  *Id.*  The district court also found that "defendants would be prejudiced in the event plaintiff were permitted to amend its infringement contentions," because it would need to reopen discovery in order to allow the parties to litigate the altered theory of infringement, which would increase the scope of the litigation at a relatively late date and delay resolution of the case.  *Id.*

Three weeks later, on February 22, 2012, the district court granted

Defendants' motion for summary judgment of noninfringement, holding that the

'360 Patent required that "category description" contain an alphabetic descriptive

name.  A000008–000024.  The court explained its reasoning as follows:

> The specification teaches that the descriptive "name" that is
> included in the definition of a "category description" is best
> understood in the context of a descriptive alphabetic name.  See
> [Ex.] (examples of descriptive names include the words
> "AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc.").
> The specification further demonstrates this understanding by
> distinguishing between "category descriptions" and
> "identifiers" that can be associated with the category
> descriptions.  The identifiers, which are used to help manage
> the category descriptions in the preferred embodiment, are
> preferably numeric identifiers, are independently associated
> with the category descriptions, and do not change regardless
> whether the "name" of a category description changes… The
> claim language reaffirms this understanding. It differentiates
> between "category descriptions" and "category description
> identifiers."  Dependent claim 4, for example, covers a method
> for accessing files, wherein the step of creating a category
> description table comprises, in part, the steps of: "(3) creating a
> unique category description identifier associated with the new
> category description; and (4) storing the new category
> description and unique category description identifier in the
> category description table" .… Since the claim language
> distinguishes between "category description" and "category
> description identifier," the court must presume a difference in
> meaning and scope between the two.

A000019–000020 (internal citations omitted).  The district court – in reaffirming

the reasoning that supported its earlier construction of "category description" – did

not "narrow" its construction, as SpeedTrack now argues.

## SUMMARY OF THE ARGUMENT

I.      In its claim construction order, the district court adopted the construction of "category description" that was proposed by SpeedTrack: "information that includes a name that is descriptive of something about a stored file."  SpeedTrack's argument that in granting summary judgment, the district court "changed" its construction of "category description" from the construction SpeedTrack had advocated, is wrong.  Although *SpeedTrack* asked the court to change its construction and drop the descriptive "name" requirement despite its express incorporation in the claim, in its summary judgment order, the district court refused to accept SpeedTrack's proposed change, instead stating that it was "reaffirm[ing] and clarif[ying]" its existing construction.

The district court's finding of noninfringement was properly based on a comparison between the accused Walmart.com system and its original construction of "category description" – and not on a "modified" construction of that term, as SpeedTrack argues here.  The district court noted that claims 1 and 20 of the '360 patent require category descriptions which included names that are descriptive of something about the stored files.  The court then considered whether the numbers in the "walmart-sgmt0.records.binary" file in the accused Walmart.com system contained such "category descriptions," and it correctly concluded that the entries

in that file do not contain any names that are descriptive of anything about the stored files.

Although SpeedTrack now contends that the district court erred in applying the construction of "category description" that SpeedTrack itself had advocated, such arguments are viewed with "extreme disfavor." This Court should refuse to entertain SpeedTrack's argument.

II.    Even if the district court construed "category description" more narrowly than SpeedTrack originally advocated, when it applied its construction to require "names that are descriptive of something" to require alphabetic names, *that* construction is also amply supported by the intrinsic evidence.

The claim language differentiates between "category descriptions," which are names that are descriptive of something about a stored file, and "category description *identifiers*" which may be solely numeric. The specification contains examples of "category descriptions," always referring to them as alphabetic descriptive names such as the words "AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc.," and makes clear that these are different from and distinct from "identifiers" which are "preferably numeric." As the district court noted, the claimed invention can be implemented without identifiers, but it *must* include category descriptions.

III.    SpeedTrack's first argument – that its new construction must be adopted because the "preferred embodiment" will be excluded by the district court's construction – ignores perhaps the most crucial fact here: that two years after the '360 Patent application was filed, the applicants amended their claims to gain allowance over the prior art by adding the limitation that each category description "compris[e] a descriptive name," and thus taking their "preferred" embodiment outside the scope of their claims.  The fact that Figure 4 in the patent, an embodiment in the original patent application, is not covered after this narrowing amendment is not surprising – and it certainly is not a reason to reject the district court's construction.  Yet, notably, SpeedTrack does not even mention this key prosecution event in its brief.  In any event, the law is clear that unambiguous claim language controls – even where *all* disclosed embodiments are excluded by that language, and particularly, when an amendment to gain allowance causes this.

IV.    The district court did not abuse its discretion in denying SpeedTrack's request that Defendants be judicially estopped from arguing that numeric identifiers alone do not satisfy the district court's construction of "category description."  SpeedTrack has not cited a single case in which a court found that a party could not argue infringement and validity issues in the alternative, or finding judicial estoppel on anything remotely close to the facts here.

In deciding whether to apply judicial estoppel, the Ninth Circuit "typically consider[s] (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). None of the elements required for the application of judicial estoppel are present here. First, the Defendants' alternative positions that either the '360 Patent was invalid as applied, in view of prior art, or alternatively, the accused product does not infringe, are not clearly inconsistent and were not a misrepresentation or fraud on the court. Second, the Defendants did not successfully persuade the Patent Office or the district court to accept their position on invalidity, and then switch positions. Third, SpeedTrack suffered no unfair detriment from Defendants' invalidity arguments to the PTO in the *ex parte* reexamination proceeding, nor from Defendants' noninfringement arguments to the district court on summary judgment.

V.      The district court did not abuse its discretion in denying SpeedTrack's motion for leave to amend its Final Infringement Contentions.

Control of the district court's docket is inherently within its discretion. It was well

within the court's discretion to find that SpeedTrack failed to demonstrate good cause for its late amendment under the local rules when it waited more than five months after learning of the noninfringement defense at issue here, and indeed, waited until two weeks after it became clear that the district court might rule against it on noninfringement (after oral argument on the parties' summary judgment motions), before even seeking leave to amend. As the district court found, permitting SpeedTrack to pursue a new theory of infringement at such a late date would have created unacceptable delay by requiring the court to reopen discovery and create new grounds for a dispositive motion before trial. There was no abuse of discretion here.

VI.    Finally, as to Defendants' cross-appeal, the district court erred in finding that the result of the reexamination proceeding imposed a heightened burden of proof with respect to Defendants' anticipation defense under 35 U.S.C. § 102. SpeedTrack argued – and the district court accepted – that by seeking *ex parte* reexamination, Defendants had incurred a burden of proof higher than the "clear and convincing" standard ordinarily applicable to an invalidity defense.

In *Sciele Pharma, Inc. v. Lupin, Ltd.*, 684 F.3d 1253 (Fed. Cir. 2012), this Court held that it was error to impose an "added burden" to invalidity defenses based upon references that were previously before the PTO. By requiring Defendants to specifically address how or why the PTO's decision on

37

reexamination was wrong, ***in addition to*** how or why the prior art references anticipated the claims of the patent, the district court committed an error of law and should be reversed.  The Defendants had, at a minimum, created a question of fact on the validity issues when they presented their expert report laying out in great detail their invalidity positions.

*If* the Court decides to vacate the district court's non-infringement decision, then it should also vacate the district court's order granting SpeedTrack's motion for summary judgment with respect to Defendants' anticipation defense.

## ARGUMENT

### I.    Standard of Review

First, this Court reviews a district court's grant of summary judgment *de novo*.  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1361 (Fed. Cir. 2012).  Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Second, claim construction is a question of law that is reviewed *de novo*.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc).  However, this Court looks with "extreme disfavor" on appeals where, as here, a party challenges on appeal the very claim construction it advocated below.

*Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("[W]e look with extreme disfavor on appeals that allege error in claim constructions that were advocated below by the very party now challenging them.")

Third, as to SpeedTrack's appeal of the district court's determination that Defendants were not judicially estopped from pressing their "category description" noninfringement defense, "[w]hether judicial estoppel applies is a matter of regional circuit law." *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1071 (Fed. Cir. 2009). In the Ninth Circuit, a district court's decision not to invoke judicial estoppel is reviewed under an abuse of discretion standard. *Engquist v. Or. Dep't Of Agric.*, 478 F.3d 985, 1000 (9th Cir. 2007).

Fourth, with respect to SpeedTrack's appeal of the district court's denial of its motion for leave to amend its infringement contentions under N.D. Cal. Local Patent Rule 3-6, this Court reviews a district court's decision enforcing local patent rules under an abuse of discretion standard. *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1367–68 (Fed. Cir. 2006) (citing *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). In reviewing a district court's decision under the abuse of discretion standard, appellate courts "will not reverse absent a definite and firm conviction that the [district] court made a clear error of judgment." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 648 (Fed. Cir. 1994) (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 379 (9th Cir. 1988)).

This Court may not substitute its judgment for the district court's, but must affirm if the ruling fell "within a broad range of permissible conclusions." *See, e.g., Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002).

## II.    Defendants' Response to SpeedTrack's Appeal

### A.    This Court looks with "extreme disfavor" on an appellant's argument that the district court erred in applying a claim construction that the party itself had advocated below.

*SpeedTrack* proposed the construction of "category description" that the district court adopted.  Then, only after SpeedTrack recognized that its literal infringement case might not survive summary judgment, did SpeedTrack ask the court either to change the claim construction or to allow SpeedTrack to amend its infringement contentions to add a doctrine of equivalents argument.  This is far too late for a party to ask the court to revisit both its claim construction and infringement contentions, and to disregard a claim element that the party had added during prosecution to get the claim allowed – here, that the "category description comprise a descriptive name."

This Court has made it clear that it will not tolerate such "tactics," and looks "*with 'extreme disfavor' on appeals that allege error in claim constructions that were advocated below by the very party now challenging them*." *Northern Telecom*, 215 F.3d at 1290.  "The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its

face, and litigants hardly need warning not to engage in such conduct." *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998); *see also Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1355 (Fed. Cir. 2011) (where plaintiff-appellant took position on appeal that challenged claim construction it argued for in district court after entry of summary judgment of invalidity, stating that "[w]e view such tactics with 'extreme disfavor'").

In *Key Pharmaceuticals v. Hercon Laboratories Corp.*, after criticizing as "highly questionable [defendant-appellant] Hercon's assertion on appeal *that the trial court erred when it adopted the very construction Hercon urged upon the court*," this Court explained that "doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated at the trial." 161 F.3d at 714–15, n.1. The Court stated:

> Allowing parties in a patent suit to assert "error" in such situations would open the door to mischief and judicial inefficiency. For example, a party could advocate a certain claim construction at trial believing that that claim construction will result in favorable resolution of infringement or validity issues. If the trial court adopts that claim construction but resolves the infringement or validity issues unfavorably, the party could thereafter assert a new claim construction to get the proverbial "second-bite," possibly necessitating a retrial.

*Id.* at 715. Furthermore, noting that the appellant-defendant's disavowal on appeal of the claim construction it advocated at trial was – like SpeedTrack's disavowal of its claim construction here – "an obvious attempt to salvage" its case, this Court

stated in *Key Pharmaceuticals* that "[a]bsent a justifiable reason for such a claim construction shift, the doctrines of law to which we have referred should bar parties from fundamental changes in positions asserted at trial .... Indeed, we could appropriately refuse to entertain Hercon's appeal on the issue of claim construction." *Id.* at 715.

**B.    SpeedTrack's contention that the district court "changed" its construction of "category description" in deciding the infringement issue is wrong.**

As the district court correctly noted in its summary judgment order, an infringement analysis is a two-step process: "First, the court determines the scope and meaning of the claims via claim construction; then, the court compares that construction of the patent against the accused products." A000016 (citing *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1371 (Fed. Cir. 2005).

**1.    The district court used precisely the construction of "category description" that SpeedTrack had proposed.**

In its claim construction order, the district court adopted the construction of "category description" that SpeedTrack proposed: "information *that includes a name that is descriptive of something* about a stored file." A000695–000699 (emphasis added). As so construed, the term could not be any clearer or less ambiguous – a "category description" is a "*name* that is *descriptive* of something." And an arbitrary number (*e.g.*, 4293426806) is not a "name that is descriptive of something."

In urging the district court to adopt its proposed construction, SpeedTrack told the court that the term "category description" was "expressly and plainly defined in independent claims 1 and 20 as "**comprising** a descriptive name" – meaning "the 'category description' must include at least a descriptive name, but may include more information as well." A000264 (emphasis in original). SpeedTrack argued that the doctrine of claim differentiation, and additional terms added in dependent claims 2 and 11 of the '360 Patent, supported its view that the category description had to include *at least* a descriptive name, even if it included a number, which it called a "category description identifier":

> [i]n dependent claims 2 and 11, the term 'category description' includes a 'unique category description identifier created by the computer system' in addition to the descriptive name …. Accordingly, in these claims [2 and 11], 'category description' must [also] include an identifier and cannot be limited to the name.

A000264. Indeed, according to SpeedTrack, the requirement that a category description include a descriptive name was essential for the allowance of these claims:

> [N]one of the '360 patent claims, when originally filed, specified that category "compris[e] a descriptive name." *The patentees added this limitation to each of the independent claims* in *response to the Examiner's rejection of the claims over a prior art patent to Schwartz.* The patentees added the "descriptive name" limitation to each independent claim to distinguish the fact that, in Schwartz, an "attribute" must first be assigned to the file. In Schwartz, an attribute is a term which is not descriptive of the content of the file. **In the claims of the**

**'360 patent, category descriptions are not necessarily attributes, because, unlike Schwartz, they are descriptive names.**

A000264 (emphasis added, internal citations omitted).[3]

The district court adopted SpeedTrack's proposed construction of "category description," finding that independent claims 1 and 20 "both refer to a 'category description' as something that is comprised of 'a descriptive name' – i.e., *a name that is descriptive of something*."  A000696 (emphasis added).

Only after Defendants moved for summary judgment of noninfringement because their system did not use a "name that is descriptive of something," did SpeedTrack change course and assert that the construction of "category description" that SpeedTrack had requested was "legally infirm." A003852–003865.  But, the district court rejected SpeedTrack's request that it modify the construction of "category description" to remove the very requirement it had added during prosecution to get the patent allowed, instead stating in its summary judgment order that it was "reaffirm[ing] and clarif[ying]" its existing construction of that term: "information that includes a name that is descriptive of something about a stored file."  A000020.

---

[3]  As discussed at *infra* note 7, it is precisely because of this amendment that SpeedTrack cannot now assert a doctrine of equivalents infringement claim regarding this element, an amendment which it told the district court was ***added*** to get the claim allowed during prosecution.

> **2.    The district court's judgment of noninfringement was properly based on a comparison between the accused system and its construction of "category description."**

After determining that its (and SpeedTrack's) construction of "category description" should stand, the district court then performed the second step of the infringement analysis:  examining "whether Wal-Mart's accused system contains a 'file information directory' with ***information that includes a name that is descriptive of a stored file*** as required by claims 1 and 20."  A000021 (emphasis added).

The district court first noted that step (b) of claim 1 requires the creation of "a file information directory comprising at least one entry corresponding to a file on the data storage system, each entry comprising at least a unique file identifier for the corresponding file, ***and a set of category descriptions*** selected from the category description table," A000021 (emphasis added), and that step (c) of claim 20 similarly requires "storing in the data storage system a file containing at least the file name, file location information, **and *the associated category descriptions for the file***." *Id.*

The district court then reviewed SpeedTrack's contention that the purely numeric entries in the "walmart-sgmt0.records.binary" file were the "category descriptions" that corresponded to each product offered for sale on the Walmart.com website.  As the district court noted, the "category descriptions" identified by SpeedTrack "look something like the following":

**<DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>**

A000022.  The district court explained:

> As the court construes the "category description" limitation
> that pertains to both the file information directory of claim
> 1 and the "file record" of claim 20, plaintiff must demonstrate
> that the "walmart-sgmt0.records.binary" file in Wal-Mart's
> system contains entries that are comprised of alphabetic
> descriptive names, if it is to prove that defendants' accused
> system infringes.  And since it is undisputed that plaintiff
> has not come forward with evidence that "walmart-
> sgmt0.records.binary" includes alphabetic descriptive names,
> plaintiff cannot demonstrate that the accused system infringes.

*Id.*  The district court thus concluded that "summary judgment as to whether

defendants' accused system meets the 'file information directory' limitation of

claim 1 and the 'file record' limitation of claim 20 is appropriate."  A000023.[4]

This conclusion was not based on a "narrowing" of its construction, as SpeedTrack

now argues.

---

[4] It should be noted that Defendants do not contend, nor do they believe the district
court's decision held, that a category description cannot include *any* numbers, and
must only include only letters of the alphabet.  The district court's decision clearly
was meant to be read to refer to "alphanumeric" characters, not solely "alphabetic"
letters.  A "category description" could presumably be "Letters2010," if it were
meant to describe letters written in 2010.

**C.**   **Even if SpeedTrack were correct that the district court "modified" its construction when it determined that a "category description" which included "names that are descriptive of something" required *alphanumeric* names that have some meaning to human readers, that construction is not wrong as a matter of law.**

Claim construction must begin with an examination of the claim language itself. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim."); *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation.")

The terms used in the claims are generally given their "ordinary and customary meaning." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). But, where a term is coined, as "category description" was here, the Court must look to the "intrinsic evidence of record, including the written description, the drawings, and the prosecution history, if in evidence." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324–25 (Fed. Cir. 2002) (citations omitted); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) (this Court looks at "the ordinary meaning in the context of the written description and the prosecution history") (citations omitted). "Such intrinsic

evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The Court's examination of the intrinsic evidence must begin with the claim language itself. In particular, "the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. Further, the Court should consider the other patent claims, both asserted and unasserted, "[b]ecause claim terms are normally used consistently throughout the patent, [and] the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Differences between claims may also guide the Court in understanding the meaning of particular claim terms. *Id.*

Second, the claims "must [also] be read in view of the specification, of which they are a part" and which is often the "best source" for understanding a technical term. *Id.* at 1315.

Third, the Court "should also consider the patent's prosecution history, if it is in evidence." *Id.* at 1317. The prosecution history is important because it shows how the PTO and the inventor understood the patent, and whether the inventor has disclaimed certain claim scope to obtain the patent. *Id.*

In the summary judgment order, the district court found, first, that the claim language of the '360 Patent "reaffirms th[e] understanding" that "*a name that is descriptive of something about a stored file*" could not mean computer-generated numerical identifiers:

> [The claim language] differentiates between "category descriptions" and "category description identifiers."  Dependent claim 4, for example, covers a method for accessing files, wherein the step of creating a category description table comprises, in part, the steps of:  "(3) creating a unique category description identifier associate with the new category description; and (4) storing the new category description and unique category description identifier in the category description table."  [A004449, '360 Patent, 17:19–30]  Since the claim language distinguishes between "category description" and "category description identifier," the court must presume a difference in meaning in scope between the two …. Specifically, the court reads these differences to support the conclusion that a category description "identifier" – numerical or otherwise – must necessarily be distinct from the "descriptive name" that pertains to a "category description."

A000020.

Second, the district court turned to the '360 Patent's specification, noting the "examples of descriptive names" provided in the specification, including "the words AGREEMENTS, E-MAIL, MEMOS, NEWSLETTER, etc."  A000019.  The district court noted that the specification of the '360 Patent, like the claims themselves, distinguished between "category descriptions" and numeric "identifiers" that can be associated with category descriptions:

> "[t]he identifiers, which are used to help manage the category descriptions in the preferred embodiment, are preferably numeric identifiers, are independently associated with the category descriptions, and do not change regardless of whether the 'name' of a category description changes."

A000020. The district court pointed to the language in the specification, which states that the "claimed invention can also be implemented without 'identifiers,' although the claimed invention must include 'category descriptions'." *Id.*

But beyond what is in the patent itself, SpeedTrack has a much higher hurdle to overcome here, namely the prosecution history of the patent – a hurdle which it completely ignores in its brief. SpeedTrack's primary argument on appeal in opposition to the claim construction is that the district court's application of its construction of "category description" must be wrong because, according to SpeedTrack, it excludes the "preferred embodiment" of the '360 Patent, pointing to Figure 4. Pl.-Appellant's Br. 27–32. But, the embodiment shown in Figure 4 was part of the original patent application filed nearly two years before the applicants *amended* their claims to expressly require that "each category description compris[e] a descriptive name," an amendment that apparently excluded Figure 4 from the scope of the claims. Remarkably, whereas SpeedTrack pointed the district court precisely to this amendment as important support for its proposed construction of "category description," it now mentions it nowhere in its brief. *See* A000264 ("It should be noted that none of the '360 patent claims, when originally

filed, specified that category descriptions 'compris[e] a descriptive name.' The patentees added this limitation to each of the independent claims in response to the Examiner's rejection of the claims over a prior art patent to Schwartz.").

Where the claim language is unambiguous – as it is here – courts routinely interpret claims to exclude *all* embodiments. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215–1216 (Fed. Cir. 2008) ("[W]here we conclude that the claim language is unambiguous, we have construed the claims to exclude all disclosed embodiments."); *Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1308–1309 (Fed. Cir. 2000) (interpreting unambiguous claim language to exclude the preferred and only embodiment disclosed in the specification; stating that "the unambiguous language of the amended claim controls over any contradictory language in the written description").

And where, as here, a narrowing amendment was made to gain allowance over the prior art, the claims need not be stretched to cover every embodiment disclosed in the patent at issue. *See North Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005) ("[T]he fact that claims do not cover certain embodiments disclosed in the patent is compelled when narrowing amendments are made in order to gain allowance over prior art.") This principle also holds true for a "preferred" embodiment. *Id.* ("[L]imitations may be construed to exclude a preferred embodiment if the prosecution history compels

51

such a result.") (citing *Elektra Instrument*, 214 F.3d at 1308). Thus, the law is clear that narrowing amendments can exclude non-limiting embodiments. Such is the case here with respect to Figure 4. A004442 ('360 Patent, 4:55–57) ("Throughout this description, the preferred embodiment and examples shown should be considered exemplars, rather than as limitations on the present invention.")[5]

Nor does it help SpeedTrack to cite this Court's decision in *Vitronics*, 90 F.3d at 1583, for its argument that a claim construction that would exclude the preferred embodiment "is rarely, if ever correct." This statement from *Vitronics* was premised on the principle that "it is unlikely that an inventor would define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way." *Id.* at 1583–84 (quoting *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996)). But here, the relevant claims of the '360 Patent *were* amended to require that "each category description compris[e] a descriptive name" – meaning that, contrary to

---

[5] SpeedTrack also argues that the district court's application of its construction of "category description" must be wrong because it reads claim 5 – which SpeedTrack does not assert against Defendants – out of the patent. Pl.-Appellant's Br. 33-34. In fact, claim 5 *confirms* that the "category description identifier" is something different from the category description itself. Claim 5 depends from claim 2, which says a category description includes both a user defined category name, and a unique category description identifier. A004449 ('360 Patent, 17:31–45). The fact that claim 5 refers only to the latter element does not mean that the category description of claim 2 somehow ceases to require the descriptive name.

the principle explained in *Vitronics*, the invention was no longer defined as the inventors had originally hoped, while Figure 4 remained in its original, pre-amendment form. *Vitronics*, therefore, simply does not apply here.

Simply put, the district court properly found that "a 'category description' – which must be construed to include information that includes a descriptive 'name' – does not incorporate identifiers (numerical or otherwise) as part of the descriptive 'name' itself." A000020. That is, while a category description *might* include numeric identifiers, it *still* must have a descriptive name.

And, there could be no question of fact that

**<DVAL_ID DIMENSION_ID="500569" ID="4293426806"/>**

is not a descriptive name of anything.

**D.  The district court did not abuse its discretion in denying SpeedTrack's request that Defendants be judicially estopped from arguing that numeric identifiers are not "names that are descriptive of something."**

**1.  Judicial estoppel does not preclude alternative noninfringement and invalidity arguments.**

"Whether judicial estoppel applies is a matter of regional circuit law." *Source Search Tech.,* 588 F.3d at 1071. In deciding whether to apply judicial estoppel, the Ninth Circuit "typically consider[s] (1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing

53

the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).  Moreover, judicial estoppel only applies where the party's position was "tantamount to a knowing misrepresentation to or even fraud on the court." *Johnson v. Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998); *Ibrahim*, 522 F.3d at 1009 (holding that judicial estoppel "seeks to prevent the *deliberate* manipulation of the courts") (emphasis in original).

In the Ninth Circuit, a district court's decision not to invoke judicial estoppel is reviewed for abuse of discretion.  *Engquist*, 478 F.3d 985, 1000 (9th Cir. 2007). Under that standard, appellate courts "will not reverse absent a definite and firm conviction that the [district] court made a clear error of judgment." *Nike Inc.*, 43 F.3d at 648.  Accordingly, the Ninth Circuit has stated that it will not substitute its judgment for the district court's, but will affirm if the ruling falls "within a broad range of permissible conclusions." *See, e.g., Grant v. City of Long Beach*, 315 F.3d 1081, 1091 (9th Cir. 2002).  "Even a determination that the district court's ruling was erroneous does not require reversal.  Only if the ruling is found to be clearly erroneous is reversal mandated." *Genentech*, 289 F.3d at 774 (applying Ninth Circuit abuse of discretion standard to district court's application of local rules).

Interestingly, SpeedTrack fails to provide **any** authority to support the application of judicial estoppel in the context of a party's alternative validity and infringement positions taken in a patent case; and the authorities it does cite are inapposite. *See* Pl.-Appellant's Br. 46–51 (citing *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009) (non-judicial estoppel case); *New Hampshire v. Maine*, 532 U.S. 742 (2001) (non-patent case); *United States v. Liquidators of European Fed. Credit Bank, In Liquidation*, 630 F.3d 1139 (9th Cir. 2011) (non-patent case); *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772 (9th Cir. 2009) (non-patent case); *Wagner v. Prof. Engineers in Cal. Gov't*, 354 F.3d 1036 (9th Cir. 2004) (non-patent case); *Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990) (non-patent case)).

> **2.    The district court correctly found that Defendants' alternative noninfringement position was not "clearly inconsistent" with their invalidity positions.**

SpeedTrack's judicial estoppel argument rests on a false premise – that a party cannot argue in the alternative that an accused product does not infringe a claim as construed, but that *if* it does, the claim is invalid because it also reads on the prior art.[6] Pl.-Appellant's Br. 47 (discussing Defendants' positions in reexamination with regard to Kleinberger reference). Defendants argued to the PTO

---

[6] As this Court recognized in *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, a party's "alternative assertion of noninfringement does not detract from its affirmative defense of invalidity." --- F.3d ---, No. 2011-1467, 2012 WL 3037176, at *12 (Fed. Cir. July 26, 2012); *see also* Fed. R. Civ. P. 8(d)(3)).

that the claims – under the broad construction that **SpeedTrack** was advancing in the district court – were invalid in light of the prior art. A003901–003903. When the PTO confirmed the claims over the asserted prior art (by rejecting the claim interpretation SpeedTrack had applied in the district court for its infringement case) Defendants did nothing improper by arguing to the district court that their accused system did not infringe because the numeric identifiers used in its operation could not satisfy the district court's construction of "category description." A002337–002338. The district court found that a noninfringement argument made in the alternative is not inconsistent at all, much less "clearly inconsistent," with Defendants' positions regarding the invalidity of the patent in view of prior art.

From the outset of this case, Defendants flatly denied infringement of the '360 Patent, **and** rejected SpeedTrack's broad application of the asserted claims. As to invalidity, Defendants identified very close prior art that they believed disclosed all of the elements of the asserted claims *as SpeedTrack applied those claims to Defendants' accused system*. As the district court recognized, positions in the alternative are not "clearly inconsistent" (A000022) – and they certainly do not rise to the level of being "tantamount to a knowing misrepresentation to or even fraud on the court." *Johnson v. Oregon*, 141 F.3d at 1369.

But perhaps even more important, SpeedTrack did not (nor could it) show the second necessary element for judicial estoppel – that Defendants had

"successfully persuaded the court of the earlier position." *Ibrahim*, 532 U.S. at 750-51. Indeed, the record is clear that Defendants had not persuaded the district court of *anything* regarding the invalidity of the asserted claims. And, even if judicial estoppel might apply to positions taken in the reexamination proceeding, in this case it was an *ex parte* proceeding in which Defendants had no right to participate, much less persuade the PTO to adopt their position. And, of course, Defendants did not persuade the PTO of anything, as the PTO confirmed the claims based on perceived differences between the prior art and the claimed invention. A003318–003321.

And, SpeedTrack also failed to meet the third element of judicial estoppel, which requires Defendants either had derived an unfair advantage by pressing their validity challenge at the PTO, or that SpeedTrack suffered undue prejudice from any position Defendants took before the PTO. *Ibrahim*, 532 U.S. at 750-51. SpeedTrack argues – offering nothing more than speculation – that had it known about Defendants' noninfringement position earlier, "[it] would have contended that infringement existed literally *or equivalently*; the reexamination may never have occurred; the litigation may never have been stayed; summary judgment of non-infringement would never have been granted; and this case would now be going to the jury rather than to this Court on appeal." Pl.-Appellant's Br. 50–51 (emphasis in original).

Unfortunately for SpeedTrack, this argument overlooks the fact that SpeedTrack, as the party alleging infringement, had the burden of proof, as well as an obligation to provide its infringement contentions, *before* the reexamination proceeding even was initiated. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011) (citing *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985)).

> **E.    The district court did not abuse its discretion in denying SpeedTrack's motion for leave to amend its Final Infringement Contentions, where SpeedTrack filed the motion almost six months after it learned of Defendants' noninfringement theory.**

Finally, the district court properly denied SpeedTrack's motion for leave to amend its Final Infringement Contentions, when that motion was only made after the summary judgment hearing, and it had become apparent to SpeedTrack that it very well could lose on the infringement issue.

This Court reviews a district court's decision enforcing local patent rules for abuse of discretion. *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1367–68 (Fed. Cir. 2006) (citing *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). Under this standard, decisions "will be affirmed unless clearly unreasonable, arbitrary, fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *O2 Micro*, 467 F.3d at 1366–67 (citing *Genentech*, 289 F.3d at 774).

In the Ninth Circuit, "good cause" turns on diligence and prejudice to the opponent and the court's schedule. *Wordtech Sys. Inc.  v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1322–23 (Fed. Cir. 2010) (deferring to the district court and affirming the district court's denial of motion to amend for lack of diligence and prejudice to opponent under Ninth Circuit law); *Ultimax Cement Mfg. v. CTS Cement Mfg. Co.*, 587 F.3d 1339 (Fed. Cir. 2009) ("'Good cause' has been defeated by undue delay in moving to amend, combined with a need to reopen discovery based on the proposed amendment .... Thus, the district court was clearly within its discretion to deny the motion to amend based on undue delay and a similarly burdensome need to reopen summary judgment motions." (internal citation omitted)); *O2 Micro*, 467 F.3d at 1366 ("We agree with the Northern District of California that 'good cause' requires a showing of diligence.")

"Under the good cause standard, the threshold inquiry is whether the movant has been diligent." *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1381 (Fed. Cir. 2011).  The burden is on the movant to establish diligence, rather than on the opposing party to establish a lack of diligence. *See Genentech*, 289 F.3d at 774.

The district court found that SpeedTrack lacked diligence in seeking to add its theory of infringement under the doctrine of equivalents:

(1)    more than three years after SpeedTrack served its Final Infringement

Contentions, A002459–002466 (filed July 21, 2008);

(2)    more than five months after SpeedTrack became aware that

Defendants intended to advance the noninfringement defense that

was, in part, the subject of Defendants' motion for summary judgment

of noninfringement, A004382-004396 (filed June 23, 2011);

(3)    over four months after Defendants' and SpeedTrack's cross-motions

for summary judgment were fully briefed, A003773–003793;

A003794–003813 (both filed July 27, 2011); and

(4)    several weeks after the Court's hearing on the cross-motions for

summary judgment, by which time SpeedTrack recognized that it

could very well lose on the literal infringement issue, A003850–

000051 (hearing on November 16, 2011).

In *O2 Micro*, this Court upheld the district court's finding of lack of

diligence where the plaintiff "waited almost three months [from when it first had

reason to know of a new infringement theory] ... to serve its proposed amended

contentions and two more weeks to formally move to amend." 467 F.3d at 1367.

Here, as in *O2 Micro*, it is undisputed that SpeedTrack took no action for almost

six months after learning that Defendants intended to focus their noninfringement

defense on step (b) of claim 1 and step (c) of claim 20. A000006–000007. Indeed,

SpeedTrack waited until more than two weeks *after oral argument on the parties'*
*cross-motion for summary judgment* before seeking to leave to amend. A003934–
003945 (filed December 2, 2011).

SpeedTrack argues that the district court abused its discretion when it did
not afford SpeedTrack "the opportunity to offer a *responsive* doctrine-of-
equivalents theory" after it became clear that its literal infringement case likely
would not survive summary judgment.  Pl.-Appellant's Br. 51 (emphasis added).
But, one thing should be certain in a litigation – a party cannot wait to test its
infringement contention in a dispositive motion hearing and then, *only when it*
*becomes apparent that it is about to lose*, seek to amend its infringement
contentions to avoid the result its infringement contentions invited.  *Innova/Pure*
*Water v. Safari Water Filtration*, 381 F.3d 1111, 1124 (Fed. Cir. 2004) ("[I]t is not
an abuse of discretion for a district court to deny a motion for leave to amend
following the close of discovery, past the deadline for amendments, and past the
deadline for filing dispositive motions." (quoting *Lowe's Home Ctrs., Inc. v. Olin*
*Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002))).

SpeedTrack made no effort to amend its infringement contentions during the
entire six-month period before the summary judgment hearing on literal
infringement.  The district court found that SpeedTrack failed to demonstrate the
necessary diligence the court expects of parties before it.  SpeedTrack's position

that the judicial estoppel argument it made to prevent the Defendants from pressing their *literal* noninfringement defense equates with diligence on pressing a doctrine of equivalents defense was rejected by the district court.  Pl.-Appellant's Br. 51–52.  And SpeedTrack offers no authority to support its position that asking the district court to preclude Defendants from making a particular noninfringement argument on *literal* infringement demonstrates SpeedTrack's diligence in moving to amend its *doctrine of equivalents* infringement contentions.  Indeed, SpeedTrack's judicial estoppel argument did not even suggest that SpeedTrack intended to assert additional doctrine of equivalents contentions if it failed – and, as SpeedTrack concedes, it only asserted the doctrine of equivalents when the district court "appeared disinclined" to accept its judicial estoppel argument.  *Id.* at 52.  The district court found that SpeedTrack's argument was "unpersuasive" because "the inclusion of an uncertain estoppel argument in connection with dispositive motions is no substitute for a formal and affirmative decision to seek leave to amend."  A000022–000023.

Finally, the district court also found that "[a]s a practical matter, the court would need to consider reopening discovery in order to allow the parties to litigate plaintiff's altered theory of infringement, and this would furthermore create new grounds upon which plaintiff could again seek a dispositive ruling before trials – all of which would increase the scope of litigation at this relatively late date and

62

delay resolution of the case." A000007. Thus, "defendant would be prejudiced in the event plaintiff were permitted to amend its infringement contentions." *Id.* Moreover, the district court also noted that permitting amendment would have further delayed resolution of the case. As this Court has long recognized, the district court is the keeper of its own docket. *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995) ("A district court has the inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'")[7]

## III.    Defendants-Cross Appellants' Cross-Appeal

Despite the many reasons this Court should affirm the district court's finding of no infringement, *if* the Court decides to vacate that decision, then it should also vacate the district court's order granting SpeedTrack's motion for summary

---

[7]  As Defendants argued in their opposition to SpeedTrack's motion for leave to amend its Final Infringement Contentions, the district court also could have denied SpeedTrack's motion on the grounds that the proposed amendment would have been futile. *See* A004278-A004279. During the prosecution of the '360 Patent, to gain allowance over prior art, the claims were amended to expressly require that "each category description compris[e] a descriptive name." *See supra,* at 18-19 (quoting SpeedTrack's own reliance on these claim amendments in its 2008 claim construction briefing); *see also* A004278-A004279. Because the claims had been amended to define each "category description" as comprising a "descriptive name," SpeedTrack was precluded from relying on the doctrine of equivalents to recover "category descriptions" that include only numbers, without any descriptive names. *See Lucent Techs.* 525 F.3d at 1218 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002) ("Narrowing the claims in response to a rejection during prosecution creates a presumption that the applicant surrendered the territory between the original claims and the amended claims.")).

judgment with respect to Defendants' anticipation defense under 35 U.S.C. § 102. *See* A000015-A000016.  The district court reached its decision on this issue based on its acceptance – and its *adoption* – of SpeedTrack's improperly high "post-reexamination" burden of proof.

### A.    In granting SpeedTrack's motion for summary judgment of no anticipation, the district court erroneously concluded that the fact that the '360 Patent claims survived reexamination created a heightened burden of proof under 35 U.S.C. § 282.

SpeedTrack's request that the district court require Defendants to demonstrate that the PTO's findings in the reexamination were "wrong" to maintain their invalidity defense as to the references considered by the PTO was incorrect as a matter of law.  *See* A003810; A000015.

The district court's error was the direct result of this flawed argument advanced by SpeedTrack – that Defendants, by seeking *ex parte* reexamination, incurred a burden of proving invalidity in the district court that was higher than the "clear and convincing" standard ordinarily applied to an invalidity defense. A002645.  That is, SpeedTrack argued that because the prior art references at issue had already been considered by the PTO in the reexamination proceedings, it was Defendants' burden to show that that the PTO had been wrong in not finding the claims anticipated.  *See* A003810  ("The Patent Office's decision to confirm the validity of the asserted claims means that, in opposing this motion, Walmart.com and Endeca have the additional burden of showing that the Patent Office was

wrong, a burden that is 'especially difficult,' in addition to its burden of proving anticipation by clear and convincing evidence …. Walmart.com and Endeca do not even acknowledge their enhanced post-Reexamination burden … ")

The district court accepted the standard urged by SpeedTrack, and required that Defendants provide "evidence or argument" specifically addressing the PTO's decision as to anticipation of the asserted claims of the '360 Patent by the six prior art references in question. A000015 ("[P]laintiff correctly notes that defendants have failed to come forward with any evidence or argument addressing how or why the PTO's decision on reexamination … was wrong."); A000016 ("[D]efendants cannot overcome their burden to prove anticipation in light of a PTO reexamination proceeding that has affirmed the validity of claims over the prior art references asserted by defendants.")

The court's standard, essentially, was to make the *ex parte* reexamination decision binding on Defendants. But, only *inter partes* reexaminations are binding, and for good reason – Defendants had no right to participate in the *ex parte* reexamination, or to attend the Examiner Interview which ultimately resulted in an allowance, after a final rejection. A003318-003321. The district court committed an error of law by imposing a burden on Defendants to demonstrate that the PTO was "wrong" in finding that the prior art references at issue did not anticipate the claims of the '360 Patent.

This Court recently rejected precisely the position urged by SpeedTrack and adopted by the district court below. In *Sciele Pharma*, this Court made clear that a district court may not apply a heightened burden to invalidity defenses simply because they are based upon references that were before the PTO:

> The burden does not suddenly change to something higher – 'extremely clear and convincing evidence' or 'crystal clear and convincing evidence' – simply because the prior art references were considered by the PTO. **In short, there is no heightened or added burden that applies to invalidity defenses that are based upon references that were before the Patent Office. The burden is always the same, clear and convincing evidence.**

*Sciele Pharma, Inc. v. Lupin, Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (emphasis added).

In *Sciele Pharma*, this Court found that the district court erred in imposing an "added burden" to prove invalidity where the prior art references were previously before the PTO. *Id.* at 1259. This Court explained that the district court's formulation of this "added burden" relied on "our suggestion that the party challenging a patent in court 'bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.'" *Id.* at 1260 (quoting *Pharmastem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007).) The Court then clarified that "***that high burden is reflected in the clear and convincing evidence burden for proving invalidity***." *Id.* (emphasis added).

Here, the district court made precisely the same error – relying on, and quoting, virtually the same "added burden" language that this Court addressed in *Sciele Pharma*.  A000016 ("When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job." (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)).

In *Sciele Pharma*, this Court reaffirmed that "[w]hether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence."  684 F.3d at 1260.  The "added burden" language – relied upon by the district court in *Sciele Pharma* and the district court here – has never meant anything more than clear and convincing evidence, and was merely a reference to the fact that "clear and convincing" is already a heightened burden. *See Sciele Pharma*, 684 F.3d at 1260.

The Supreme Court reached the same conclusion in *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011), which held that 35 U.S.C. § 282 requires an invalidity defense to be proven by clear and convincing evidence, regardless of whether or not evidence before the factfinder was previously put before the PTO. *See id.* at 2250-51.  In *i4i*, the Supreme Court confirmed this Court's

longstanding interpretation of the burden of proof required under § 282: "That burden is constant and never changes and is to convince the court of invalidity by clear evidence." *Id.* at 2243 (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).  Rejecting any suggestion that a "fluctuating standard of proof" could be discerned from past cases, the Court instead found no support for the argument that Congress ever intended "to enact a standard of proof that would rise and fall with the facts of each case." *Id.* at 2250.

**B.    Under the proper burden, there were issues of material fact as to Defendants' anticipation defense for the six prior art references in question that should have precluded summary judgment.**

Whether Defendants could meet their burden of proving anticipation under Section 102 was a question of fact for the jury to decide.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007) ("Anticipation is a question of fact.")  Moreover, as Defendants argued in their opposition to SpeedTrack's motion for summary judgment of no anticipation, SpeedTrack devoted just one paragraph of its opening brief to each of the six prior references in question, and pointed the district court to a 30-page declaration from SpeedTrack's expert providing further argument in support of the motion.  A003288.  SpeedTrack demonstrated – at best – that there were competing expert opinions as to Defendants' anticipation defense, which were more than sufficient to raise an

issue of material fact as to Defendants' anticipation defense and to survive summary judgment under the proper standard. The district court's decision to enter summary judgment of no invalidity, therefore, should be reversed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's entry of summary judgment of noninfringement. If, however, this Court decides to reverse the district court's summary judgment of noninfringement, it should also reverse the district court's entry of summary judgment with respect to Defendants' anticipation defense under 35 U.S.C. § 102.

Dated: August 23, 2012                    Respectfully submitted,

By: /s/ Steven M. Bauer
    Steven M. Bauer
    Joel Cavanaugh
    PROSKAUER ROSE LLP
    One International Place
    Boston, MA 02110
    (617) 526-9600
    *Counsel for Endeca Technologies, Inc. and Walmart.com USA, LLC*

    Noel Andrew Leibnitz
    FARELLA, BRAUN + MARTEL LLP
    235 Montgomery Street, 17th Floor
    San Francisco, CA 94104
    (415) 954-4400

    *Counsel for Walmart.com USA, LLC*

**PROOF OF SERVICE**

I hereby certify that, on this the 23rd day of August, 2012, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System, which will

send notice to all counsel of record, including Lead Counsel for Appellant, as

follows:

> Roderick G. Dorman
> MCKOOL SMITH HENNIGAN, P.C.
> 865 South Figueroa Street, Suite 2900
> Los Angeles, CA
> (213) 694-1200
> rdorman@mckoolsmithhennigan.com

I further certify that, upon instruction from the Court, the required paper

copies of the foregoing will be deposited with United Parcel Service for delivery

to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717

Madison Place, N.W., Washington, D.C. 20439.

> /s/Melissa A. Dockery
> Melissa A. Dockery
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA 23219

## CERTIFICATE OF COMPLIANCE

I, Joel Cavanaugh, counsel for Defendants-Cross Appellants Walmart.com USA, LLC and Endeca Technologies, Inc., certify that the foregoing brief complies with the type-volume limitation set forth in Fed. R. App. P. 28.1(e)(2)(B)(i).  This brief contains <u>15,520</u> words (excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)), as determined using the word count feature of the word processing program used to create this brief (Microsoft Word 2003).  I further certify that the foregoing brief complies with the typeface and type style requirements set forth in Fed. R. App. P. 32(a)(5)-(6).  This brief has been prepared using a proportionally spaced typeface using Microsoft Word 2003, in 14-point Times New Roman font.

Dated:  August 23, 2012                             /s/ Joel Cavanaugh
                                                     Joel Cavanaugh